WISCONSIN TELEPHONE COMPANY, Appellant, vs. CITY OF MILWAUKEE, Respondent.

*November 11—December 8, 1936.*

252

For the appellant there were briefs by *Miller, Mack & Fairchild,* and oral argument by *Bert Vandervelde,* all of Milwaukee.

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Ronold A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler.*

FRITZ, J.   The plaintiff paid the $6,854.75, which it seeks to recover herein, to the city of Milwaukee under protest and duress, in order to be permitted by the city to open up certain street pavements to install underground equipment required in conducting plaintiff's business as a public utility. The city exacted that payment under an alleged ordinance which purported to authorize its commissioner of public works to grant permits to public utilities for opening street pavements or resurfaced streets, laid within three years, upon a showing that an emergency existed, provided, however, that no such permits should be granted until the utility paid to the city "a sum equal to the balance due on any special assessment levied against the abutting real estate for the street pavement or resurfacing.  Any sum so paid shall be credited to any unpaid special assessment on any such real estate and said assessment canceled."  The plaintiff alleged in its complaint and contends herein that that ordinance and the payment exacted thereunder was unjust, discriminatory, and arbitrary; that the amount of the fee required for the issuance of such a permit was excessive, unreasonable, and extortionate because the amount of unpaid special assessments bears no relation whatsoever to such sum as the city might reasonably demand as a condition for issuing such a permit; that the ordinance was not enacted in the exercise of any authority conferred upon the city; that it was contrary to the laws of the state and unconstitutional and void; that there was no valid law whatsoever requiring the payment of any such sum; and that, therefore, the city was without right or authority to require or collect that payment under that ordinance or otherwise.

The city alleged in its answer and contends herein that the permit was issued under the authority of ch. 269, Laws of 1915, which provides that whenever in a city of the first class it is contemplating paving any street with a pavement laid on a concrete foundation, if it shall give written notice through its commissioner of public works to any public service corporation, including telephone companies, three months in advance of the actual beginning of work on such pavement, that it is going to be laid, then such utility must lay all underground construction in said street prior to the beginning of such pavement, and that after it is laid, the said city shall have the right to refuse to permit the opening thereof for the purpose of laying new equipment therein; that, in respect to the pavement involved herein, written notice as prescribed in ch. 269, Laws of 1915, was given by the city to the plaintiff more than three months in advance of actually beginning the work of paving the streets for which the permit was issued; that the plaintiff failed to lay its underground construction prior to the beginning of such pavement; that after it was laid the city was empowered by ch. 269, Laws of 1915, to refuse to permit the plaintiff to open it for the purpose of installing its equipment; that the ordinance was enacted to define certain conditions under which that absolute right of refusal to permit the plaintiff to open pavements might be modified or waived, and does outline the manner in which a contract may be entered into by the city with the plaintiff to enable it to install its equipment in a highway in which the plaintiff had forfeited rights which it may have had; and that the permit granted to the plaintiff was a new contract in which the city was waiving its right of absolute refusal to permit such installation on the condition that certain definite payments in money be made.

Upon the trial the court found that the pavement was within the terms of ch. 269, Laws of 1915, but that the city

had not notified the plaintiff in writing three months in advance of beginning the work, that the pavement was going to be laid; that the $6,854.75 paid by the plaintiff to the city were not credited to any unpaid special assessment on real estate as provided in the ordinance; and that the unpaid special assessments for paving the street, which amounted to the sum exacted from the plaintiff, have since been paid without the use of any portion of the amount paid by the plaintiff. In connection with those findings the court concluded that the ordinance in question was "void, unconstitutional and without warrant, illegal, discriminatory and arbitrary;" and that the plaintiff was entitled to recover from the city the $6,854.75 with interest. After entering judgment accordingly, the court, upon a motion,—which the city based on affidavits stating that it had failed to introduce certain newly-discovered evidence relating to timely written notice given by it to the plaintiff that the pavement was to be laid,—entered an order vacating its findings of fact, conclusions of law and judgment and granting a new trial. Upon this appeal taken by the plaintiff from that order, it must be noted at the outset that if the ordinance in question was unauthorized or unconstitutional and void, then any issue of fact as to whether the city had given the utility the three months' written notice in compliance with the ordinance is wholly immaterial, and that, therefore, newly-discovered evidence in respect to that issue is likewise immaterial and constitutes no basis for vacating the judgment and granting a new trial.

The authority and power of the plaintiff, as a public utility, to use a street or highway is derived from the state. That power and authority, as was said in *State ex rel. Wisconsin Telephone Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657,—

". . . Came from the ultimate source of power, the legislature, and passed directly to such organizations as come within its terms. . . .

"The franchise existed by express legislative grant. Its exercise might be controlled only in recognition of its existence, and in conformity with a just and reasonable administration of the police power in the interest of the city and its inhabitants."

In sec. 180.17 (1), Stats., the legislature provided that such utilities "may, subject to reasonable regulations made by any city or village through which its transmission lines or systems may pass, construct and maintain such lines or systems with all necessary appurtenances in, across or beneath any public highway or bridge." The "reasonable regulations" which a municipality may impose under that statute are only such as are referable to and are within the limits of the police power. *State ex rel. Wisconsin Telephone Co. v. Sheboygan, supra; Milwaukee E. R. & L. Co. v. Milwaukee,* 209 Wis. 656, 245 N. W. 856. As was held in *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041, in respect to regulations enacted under that power, "the validity of a legislative police regulation depends upon whether the ends sought to be attained are appropriate, and the means to such end are also appropriate." As the court said in *Mehlos v. Milwaukee,* 156 Wis. 591, 599, 146 N. W. 882,—

"There must be reasonable ground for the police interference and also the means adopted must be reasonable for the accomplishment of the purpose in view. So in all cases where the interference affects property and goes beyond what is a reasonable interference with private rights, it offends against the general equality clauses of the constitution, it offends against the spirit of the whole instrument, it offends against the provision against taking property without due process of law and against taking property for public use without first rendering just compensation therefor. So every police regulation must answer for its legitimacy at the bar of reasonableness."

An analysis of the ordinance in question discloses that there is here no reasonable relationship between the ends or objects, which could be lawfully sought by regulation in that respect, and the means which were adopted to that end. As the right of the plaintiff to occupy the streets affected was derived entirely from the state, the object of a municipal "regulation" pertaining to a necessary opening of a street must relate to the restoration thereof to its former condition and any damage or expense incurred by the city in connection therewith, or as a result thereof. In other words, as the permit, which was itself issued under the ordinance, required the street to be restored to its former condition, the only valid conditions in respect to payments to be made by a utility, which the city could lawfully impose, would seem to be in relation to the expense of the city connected with the granting of the permit, the inspection and supervision of the utility's opening and restoring of the pavement, the liabilities which the city might incur while the work was in progress or as a result thereof, and such damage as might result from inability to restore the street to its former condition. In this connection it must also be noted that under the ordinance no distinction is made as to payment required on account of a small opening of but a few feet in a street for the purpose of a minor repair, and an opening along the entire frontage of an owner's property. The payment required is the same in each case regardless of probable differences in the extent of the damage which may possibly result.

On the other hand, it is obvious that neither the ordinance's requirement that the utility must pay the balance due on any special assessment levied against the abutting real estate for street pavement or resurfacing, nor the provision therein for crediting the amount so paid to such unpaid special assessment and then canceling it, has any legitimate relation to any of the lawful objects of such a regulation.

If it had been contemplated that the amount thus required to be paid would represent the damages sustained by an abutting property owner, it could be recoverable only by the owner who was damaged. But such damage as might be sustained could not be measured by, or arbitrarily considered the equivalent of, the amounts of the special benefits which have been assessed against the abutting owners. An owner, who had no special benefit and was therefore not assessed, might be as greatly damaged by reason of the opening of a street as one who was assessed. Likewise, a property owner who had paid all or a part of his assessment would clearly be damaged as much as one who paid no part of it. But under the ordinance the latter would be arbitrarily preferred over the others; and as a consequence of such an unjust discrimination the utility would be subjected arbitrarily to an obligation imposed, in so far as the amount is concerned, without any regard to what is reasonable or warranted as a matter of regulation.

The city's contention that the ordinance in question provides a method whereby it can waive the alleged absolute right conferred upon it by ch. 269, Laws of 1915, to refuse (if the three months' written notice was given by it to a utility as provided in that chapter) to permit the opening of the pavement by a public utility for the purpose of laying any new equipment thereon, cannot be sustained. In such matters a municipality cannot exact a fee which is obviously imposed solely as a revenue measure. *Wisconsin Telephone Co. v. Oshkosh,* 62 Wis. 32, 21 N. W. 828; *Wisconsin Telephone Co. v. Milwaukee,* 126 Wis. 1, 104 N. W. 1009; *Milwaukee v. Milwaukee E. R. & L. Co.* 147 Wis. 458, 133 N. W. 593; see also *Rossmiller v. State,* 114 Wis. 169, 188, 89 N. W. 839. Moreover, even if that chapter was intended to confer upon the city an absolute right to arbitrarily so refuse, there is nothing therein which authorizes the city

to waive that right in consideration of the payment of an amount which bears no reasonable relationship to the object or ends which could be lawfully sought by regulation in the proper exercise of its police powers. As was said in *State ex rel. Wisconsin Telephone Co. v. Sheboygan, supra,*—

"To permit the city to base its action upon consideration of financial benefit to itself would be allowing it to put its powers up for sale to the highest bidder. . . . We say without hesitation that the city has no right to barter with the police power, or exact for itself financial benefits as a condition for its exercise. Such power must be exercised for the public good and public welfare, and not for public gain."

Even if ch. 269, Laws of 1915, should be deemed to confer upon the city the absolute right of refusing to permit such a reopening of a pavement, and if the city determined in a proper case that such refusal was not necessary, because existing conditions did not call for the exercise of that absolute right, then there would be operative still the provisions of sec. 180.17 (1), Stats., that only reasonable rules and regulations may be imposed by a municipality as a condition of permitting the use of its streets by a utility. And, in this connection, it should also be noted here that those provisions in sec. 180.17 (1), Stats., are likewise applicable and operate as limitations upon such authority as is conferred upon the defendant herein by sec. 6.04, and subds. 30 and 32 of sec. 3, under ch. 4 of its charter; and that even if the ordinance was enacted under those charter provisions as is suggested in the city's brief, its regulatory provisions cannot be sustained in so far as they are unreasonable.

Furthermore, even if the city could impose for revenue purposes any such charge as is prescribed by the ordinance, the exaction thereof thereunder would be unlawful because the required payment is manifestly for a private instead of a public purpose, in that the ordinance, after prescribing that the sum to be paid by the utility to the city shall be "equal

to the balance due on any special assessment levied against the abutting real estate for the street pavement or resurfacing," provides that "any sum so paid shall be credited to any unpaid special assessment on any such real estate and said assessment canceled." Under that provision the payment received by the city from the utility must be credited to the unpaid special assessments levied on the real estate of a private owner, and thereupon the assessment which was a lien on his property, and which he was to pay, is to be canceled. Thus, the ordinance, if valid, would operate to take money from one of the public for the sole benefit of a private property owner who would have the balance due on his assessment paid for him by the utility. The city would be an instrument which, under the guise of a police regulation, would compel one of the public to pay the debt of another. Neither the state nor a municipality can authorize such an exaction or taking of money or property belonging to one person or corporation for any mere private purpose, or the private use or benefit of another. *Wisconsin Water Co. v. Winans,* 85 Wis. 26, 39, 54 N. W. 1003; *In re Theresa Drainage Co.* 90 Wis. 301, 304, 63 N. W. 288; *Priewe v. Wisconsin State Land & Improvement Co.* 93 Wis. 534, 547, 67 N. W. 918; *Chicago & N. W. R. Co. v. Railroad Comm.* 197 Wis. 59, 62, 221 N. W. 399.

In as much as the ordinance was void for the reasons stated above, the issue as to whether timely or sufficient written notice was given by the city to the utility, in compliance with the ordinance, was entirely immaterial. Regardless of whatever was done, or could have been proven by the city in that respect upon a new trial, the plaintiff was entitled, upon the undisputed facts, to recover, as a matter of law, the money which it had paid to the city under protest. Consequently, the order appealed from must be reversed, and the judgment must stand as it was originally entered.

*By the Court.*—Order reversed.