558

STATE EX REL. THOMSON, Attorney General, Petitioner, vs. GIESSEL, Director of Department of Budget and Accounts, Respondent. [Teachers' Retirement Case.]

*December 4—December 30, 1953.*

For the petitioner there was a brief and oral argument by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general.

For the respondent there were briefs by *E. L. Wingert,* special counsel, and *Stroud, Stebbins, Wingert & Stroud* of counsel, all of Madison, and oral argument by *E. L. Wingert.*

A brief was filed by *Toebaas, Hart, Kraege & Jackman* of Madison, for the Wisconsin Education Association as *amicus curiae.*

GEHL, J.   Ch. 434, Laws of 1953, provides as follows:

"Section 1.   20.26 of the statutes is created to read:

"20.26 *State superintendent; emergency substitute teachers.* There is appropriated from the general fund to the state superintendent a sum sufficient for the biennium 1953–1955 for the administration of his functions under sec. 39.35 and for making the payments provided for therein.

"Section 2. 39.35 of the statutes is created to read:

"39.35 *Emergency substitute teachers; compensation.* (1) The legislature hereby finds and declares: The difficulty of obtaining qualified persons to substitute during the absence of regularly employed teachers because of illness or other emergency is a serious problem in the day-to-day operation of the public schools. The shortage of teachers renders the problem particularly acute. Any steps to relieve the situation in any way are in the public interest. The number of qualified persons in a community who have made it known they are available to act as substitute teachers is inadequate. Former teachers in the public schools of this state, and especially those with sufficient number of years of teaching experience to retire and receive benefits under the State Retirement Law, secs. 42.20 to 42.54, are especially qualified to serve as substitute teachers. Registration of qualified persons available to be called in emergencies to act as substitute teachers in the public schools of this state and maintenance of a roster thereof will assist those in charge of the operation of said schools in speedily obtaining substitute teachers when emergency absences of regularly employed teachers makes the same necessary. In the main the benefits being received under said State Retirement Law by those former teachers in the public schools of this state who retired from active teaching prior to July 1, 1951, are comparably lower than the benefits received under said law by former teachers in said schools who retired on or after July 1, 1951. Those who retired under said law and were receiving benefits thereunder on June 30, 1951, in general feel inequitably treated by reason of this disparity. Their sense of aggrievement results in an attitude inappropriate to substitute teaching. Said teachers generally are not making themselves available for substitute teaching in the public schools. In order to promote in said retired teachers who were receiving retirement benefits under said law on June 30, 1951, an attitude conducive to acting as substitute teachers in said schools and to induce them to register their availability to be called to act as substitute teachers therein upon the short notice usual in such cases, it is necessary to compensate them during the time they are holding themselves in readiness to be called as such substitute teachers or for other educational services.

"(2) There is hereby established in the office of the state superintendent of public instruction (hereinafter referred to as state superintendent) a roster of persons qualified to teach in the public schools of this state who are available to substitute therein as teachers or for other educational services during the absence of regularly employed teachers because of illness or other emergency.

"(3) Any person who resides in the state, is qualified to teach in the public schools as defined in sec. 42.20, and is not regularly employed as a teacher, and any former teacher who has retired from teaching and is receiving benefit payments under the State Retirement Law, upon application in writing to the state superintendent, in such form as he may prescribe, shall be placed upon said roster of substitute teachers or for other educational services. On August 1, 1953, the state superintendent shall prepare from said roster a list for each county which shall contain the names of all persons residing in such county who are registered on said roster, with their addresses and such other data as he may deem pertinent, and send a copy thereof to the county superintendent of schools of the county, the clerk of each school district in the county, and to the clerk or secretary of every board or body having the control and management of a public school located in the county. On the first of each month thereafter the state superintendent shall prepare a supplemental list for each county containing the names of all persons residing in the county who have been added to or removed from said roster during the preceding month and any changes of address of persons on said roster residing in said county, and transmit copies thereof to the officials above mentioned.

"(4) Persons shall be removed from said roster forthwith upon death or ceasing to reside in the state or when regularly employed as a teacher in any school, and may be removed therefrom for just cause in the manner provided herein. Upon the failure or refusal of any person upon said roster to act as substitute teacher or for other educational services in a public school of this state when requested so to do by any official charged with the obtaining of substitute teachers in said school, such official shall report the same to the board or body having the control and management of such school if such official deems that such failure or refusal

was unreasonable. If such board or body deems such failure or refusal to be unreasonable, it may file with the state superintendent a written complaint, in duplicate, setting forth the circumstances thereof. The state superintendent shall send one copy thereof by registered mail to the person against whom such complaint is filed, addressed to the last address of said person upon said roster. The state superintendent shall conduct such investigations as he may deem advisable in order to ascertain the facts relative thereto, and is authorized, but not required, to hold hearings thereon. If the state superintendent finds that such failure or refusal was without just cause, he shall remove the name of said person from said roster of substitute teachers and shall notify such person thereof by registered mail, addressed to the last address thereof upon said roster. The making of application for registration upon said roster shall constitute agreement by such applicant to accept and abide by all determinations of the state superintendent in respect to such applicant's removal from or reinstatement upon said roster.

"(5) Any person removed from said roster may apply for reregistration thereon, in the same manner and subject to the same requirements as provided herein for initial registration. No person removed from the roster for just cause shall so apply within three months following the month of removal.

"(6) Every former teacher in the public schools of this state who has been retired therefrom continuously since June 30, 1951, and on that date was receiving benefit payments under the State Retirement Law, secs. 42.20 to 42.54, shall receive as compensation for services in standing by as an available substitute teacher or for other educational services in the public schools of this state, the sum of $25 per month for each month subsequent to the month of June, 1953, such former teacher is registered upon said roster, except as hereinafter provided, payable on the first of each month for the preceding month. Any person entitled to said compensation shall receive it for any month during which such person was registered on said roster for fifteen days or more. On the first of each month the state superintendent shall prepare and certify a special pay roll for the payment of such monthly compensation to those registrants entitled thereto for the previous month.

"(7) No person shall be entitled to receive for any month the compensation herein provided, to the extent said monthly compensation when added to the benefit received for that month under the State Retirement Law exceeds $100. No person who has withdrawn all or any part of the deposit made by said person under the State Retirement Law, including accumulations thereon, shall be entitled to the monthly compensation provided herein.

"(8) No person shall be paid compensation hereunder for any month during which such person serves as a substitute teacher or for other educational services in any school or schools in this state in excess of one half of the normal teaching time of a regularly employed full-time teacher in such school or schools during said month. The state superintendent shall make such determinations as may be necessary under this subsection upon such evidence or information as he is reasonably able to obtain.

"(9) Every person who applies for and is registered upon said roster of substitute teachers or for other educational services shall thereby be constituted a special employee of this state as a stand-by potential substitute teacher or for other educational services but shall not by such registration be an employee of this state for any other purpose or be entitled to any benefit, payment, privilege, right, or anything of any other kind or nature, except said monthly compensation herein provided, or be subject to any other law, rule, or regulation applicable to state employees. Payment to any person upon said roster of said monthly compensation herein provided shall in no way affect the right of such person to benefits otherwise receivable under the State Retirement Law. Any amount paid as compensation hereunder shall not be considered as compensation received for teaching services for any of the purposes of said State Retirement Law.

"(10) The state superintendent shall prepare and furnish such forms as he deems necessary in administering this section.

"(11) 'Public schools' as used herein means all schools supported wholly or in part by public funds, and under the control and management of this state, or any subdivision

thereof, empowered by law to employ teachers, except schools in cities of the first class included under sec. 38.24.

"(12) Except as authorization to pay for the month of June, 1955, the compensation herein provided, this section shall expire on and not be effective after June 30, 1955."

As a reading of the act will disclose, after reciting in its preamble the reasons for its enactment and providing a number of directions for its administration it authorizes the engagement of retired teachers of a class therein described for stand-by service as substitute teachers or for other educational services.

Respondent's principal contention is that the law by its own terms discloses a purpose on the part of the legislature to grant to certain retired teachers extra compensation for services already performed, in violation of sec. 26, art. IV, Wisconsin constitution, and that what we said and held in *State ex rel. Thomson v. Giessel*, 262 Wis. 51, 53 N. W. (2d) 726, is applicable and requires that we declare that ch. 434, Laws of 1953, is invalid. We had for consideration in that case ch. 551, Laws of 1951, by the enactment of which and in unambiguous terms the legislature sought to grant to retired teachers added benefits under the Teachers' Retirement Law without any requirement that they render or hold themselves available for additional future service. His attack must be construed as a suggestion that the 1953 legislature was motivated by a purpose to avoid by subterfuge the effect of the decision in the case to which reference has been made. It is elementary that if the statute appears on its face to be constitutional and valid, we may not inquire into the motives of the legislature, and that all doubts as to its constitutionality must be resolved in favor of its validity.

"It is of no legal consequence to say that the plan is a subterfuge and devised for the mere purpose of circumventing the constitution. That may be admitted without answering

the question thus presented one way or the other." *Loomis v. Callahan,* 196 Wis. 518, 524, 220 N. W. 816.

That we might suspect that the real purpose of the legislature in enacting ch. 434, Laws of 1953, was to accomplish what it failed to accomplish by its enactment of ch. 551, Laws of 1951, and which in the former case we declared to be invalid, is immaterial. In *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159, a statute, sec. 4444*g,* Stats. 1923, seeking to limit the height of buildings on property surrounding the state capitol was held to be unconstitutional. Following that decision the legislature by ch. 424, Laws of 1923, repealed sec. 4444*g* and enacted sec. 4444*f* which, though quite similar in its terms, made some changes in the provisions of sec. 4444*g.* In *Building Height Cases,* 181 Wis. 519, 195 N. W. 544, sec. 4444*f* was attacked again upon constitutional grounds. It was contended that the history of the legislation showed conclusively that its purpose was to evade the decision in the *Piper Case, supra,* and to accomplish by indirection that which could not be done directly. To that the court answered (p. 529) :

"It is further contended that the law is invalid because the legislature enacted it to accomplish what it failed to accomplish by sec. 4444*g,* Stats. 1921, which was held unconstitutional in *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159. There is ample reason to suspect that a desire on the part of the legislature to limit the height of buildings around the Capitol Square in the city of Madison prompted the enactment of this law. But the motives which prompted the legislature to exercise its power in this respect are not subject to judicial review, approval, or condemnation."

Our search must be for a means of sustaining the act, not for reasons which might require its condemnation.

The act must be construed as authorizing a contract by which the state rehires retired teachers. That the state may bind itself by contract for the performance of one of its func-

tions cannot be questioned. One of its major functions is to provide and promote an efficient educational system. It appears from the provisions of the body of the act that the legislature in enacting the law in question considered that it would promote the efficiency of the schools of the state. That appears also from its own expression contained in the preamble of the act which, while it is not conclusive on the court, is persuasive. *Barth v. Shorewood,* 229 Wis. 151, 282 N. W. 89. It appears just as clearly that the legislature considered that, because of a shortage of active and prospective teachers, an emergency exists; that to engage and compensate retired teachers for "stand-by" service would in some degree promote the efficiency of the school system and make it possible to equip the schools with teachers now concededly unavailable. It should be noted that at least some of the teachers who have retired have done so under statutory compulsion and that absent the provisions of ch. 434, Laws of 1953, the state is without authority to re-engage them—their services are not available except as they may be reobtained by virtue of the provisions of the chapter.

The payments provided by the act are not intended to be compensation for past services. Its terms disclose an intent and purpose to make it possible to re-engage teachers who have left the service and to induce them to hold themselves available for re-employment, thereby giving to the public the benefit of their experience and supplying a source to draw upon in this period when there exists an alarming shortage of qualified persons. We say that the act was intended as an inducement to the persons of the class designated therein to make themselves available for re-employment; that appears from the fact that not all the persons of the class described are entitled by mere enactment of the act to the payments therein provided—the compensation is to be paid only to those of the group who apply to the state superintendent for

registration upon the roster of substitute teachers or to those who offer themselves for other educational services.

Respondent calls attention to a number of specific features of the act which he claims clearly show that its obviously dominant purpose is to provide additional compensation for services already performed by retired teachers. If we were permitted to question the motive of the legislature, a recital of these features and a discussion of their force as affording a reason to suspect that the enactment of ch. 434, Laws of 1953, was prompted by a desire on the part of the legislature to evade the effect of our determination that ch. 551, Laws of 1951, is invalid would, no doubt, be helpful. But as we have stated, that is a matter with which we are not to be concerned.

It is urged that the act is an unconstitutional denial of the equal protection of the laws; that the designation of the persons affected by the act results in a classification not permitted by federal and state constitutional provisions. There is applicable as the answer to that contention what is said in *State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 344, 193 N. W. 499, and quoted with approval in *State ex rel. Michael v. McGill,* ante, pp. 336, 340, 61 N. W. (2d) 494.

" 'We do not regard this law as a police regulation. It is a law intended to promote the educational interests of the state. It relates to the conditions upon which the public will contract with those undertaking to teach in the schools of the state. As there is no constitutional requirement that such contract shall operate uniformly throughout the state, the state is at perfect liberty to prescribe one form of contract in one county and another form in another county, or one form of contract in one educational institution and a different form in another.' "

If, as is said in the foregoing, the state is at liberty to prescribe one form of a teacher's contract in one county and another form in another county it would seem to follow

logically that the state may prescribe one form of contract for one class of teachers and another form for another class.

Respondent contends that the act makes an invalid appropriation of public moneys for a private purpose. The contention is of course based upon the erroneous assumption that the payments prescribed are for services previously rendered. We would refuse to assume that the able counsel who represents respondent would maintain that an appropriation made to promote the efficiency of our school system is made for other than a public purpose.

We conclude that ch. 434, Laws of 1953, is a valid enactment.

*By the Court.*—Let a peremptory writ of mandamus issue under the seal of the court directing respondent to audit, approve, and certify for payment the requisition submitted by the department of public instruction on July 23, 1953, as prayed for in the petition.