STATE EX REL. HARVEY, Petitioner, v. MORGAN, Commissioner of Taxation, and another, Respondents.

*January 12—February 1, 1966.*

For the petitioner there was a brief by *Randall, Zimmers, Randolph & Randall* of Milwaukee, and oral argument by *William L. Randall.*

For the respondents the cause was argued by *John E. Armstrong,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J.

*Does the limitation of the benefits of ch. 580 to persons sixty-five or over constitute an unreasonable and arbitrary classification that denies others equal protection of the laws?*

We are in agreement with petitioner's general proposition that a classification of "citizens and taxpayers, for purposes of income tax credits and refunds, in an arbitrary and unreasonable way, not germane to the purpose of the statute," would constitute a denial of equal protection of the laws. But we cannot agree that the facts before us require that we hold this enactment unconstitutional.

The petitioner contends that the equal-protection clause of the constitution is violated in at least two respects. First, he contends that, assuming the purpose of the act to be relief, "Persons in the group under age 65, who may have greater need for relief than some in the 65-or-over class, are arbitrarily disqualified."

This court on numerous occasions has discussed the validity of legislative classification in reference to the equal-protection clause of the United States constitution. We have said:

"That the legislature may make classifications of persons, occupations, or industries and select them for special regulation, if there are reasonable and proper economic, political, or social reasons for so doing is well established." [1]

We have frequently said that a classification does not offend against equality before the law if the classification is based upon real differences. [2]

In addition, this court has insisted that the distinction or difference must be:

". . . germane to the purposes of the law, is not based upon existing circumstances only, applies equally to members of a class, and the character of one class is so different from another class as reasonably to suggest the necessity or propriety, having regard for the public good, of substantially different legislative treatment." [3]

It would appear that the classification requiring special legislative treatment in the granting of relief to persons sixty-five or over is reasonable. The age of sixty-five is commonly accepted and recognized as that at which a large number of persons retire and no longer in full measure are able to support themselves from current earnings. It is an age that is widely accepted as the retirement age in numerous pension plans. It is the normal age of retirement under the federal social-security system. Both federal and Wisconsin income-tax systems provide for additional personal exemptions beyond the

[1] *Christoph v. Chilton* (1931), 205 Wis. 418, 421, 237 N. W. 134.

[2] *Black v. State* (1902), 113 Wis. 205, 219, 89 N. W. 522; *Union Free High School Dist. v. Union Free High School Dist.* (1934), 216 Wis. 102, 107, 256 N. W. 788, 790.

[3] *Union Free High School Dist. v. Union Free High School Dist.* (1934), 216 Wis. 102, 107, 256 N. W. 788.

age of sixty-five. It is generally considered the threshold to old age.

While it is undoubtedly true that some persons under the age of sixty-five are equally deserving of relief, there are undoubtedly other devices by which the legislature has or could, if it so desired, grant other forms of relief or assistance. The mere fact that the legislature in the exercise of a proper police-power function has not seen fit to cure or attempt to alleviate all the evils of poverty in a single piece of legislation does not render the classification used unreasonable.[4]

We have previously held that in all legislative classifications there are always cases just within or just without the borderlines.[5] Undoubtedly, in most classifications the line of demarcation fixed by the legislature is not the only one that could have been selected. Within the limits of what is reasonable it is for the legislature and not for the court to determine the exact point at which a classification is to operate. A beginning must be made somewhere, and it is a legislative function to determine it. If that determination is reasonable in accordance with the tests of classification that have been established judicially over the years, this court will not hold it invalid.

The petitioner attempts to upset the classification by showing that similarly situated persons within the class covered by the law are treated differently in its administration. The examples given by the petitioner are not, however, probative of the point. Rather, it appears that in each case the benefits of the claimant are directly related to his income and the amounts spent for shelter either in the form of property taxes or rent.

The petitioner has failed to show that there is such disparity of treatment between persons within the class

---

[4] *Forest Home Dodge, Inc., v. Karns* (1965), 29 Wis. (2d) 78, 138 N. W. (2d) 214.

[5] *Union Free High School Dist. v. Union Free High School Dist., supra.*

to hold that the classification is in its operation unreasonable.[6]

The purpose of this law is to provide relief to the needy elderly. The class includes persons sixty-five or older who have a household income of $3,000 or less, and who either pay property taxes or rent a home.

It appears to this court that the classification has a reasonable and fair relation to the objects of the act. It applies with substantial equality to all within the class. The petitioner has not alleged any fact that leads this court to conclude that this legislation would deny uniformity of treatment or equal protection of the laws to any citizen.

*Does ch. 580 of the Laws of 1963 violate sec. 1, art. VIII of the Wisconsin constitution that "the rule of taxation shall be uniform . . ."?*

The above question is relevant only if ch. 580 is in fact a tax law. We conclude that this enactment is a relief law in its purpose and in its operation and as such is not subject to the rule on uniform taxation.

The preamble of the act 71.09 (7), Stats., states that the purpose of the act is "to provide relief to certain persons 65 years of age and over." This declaration of legislative purpose is entitled to be given great weight by the court. Where the legislature in making provisions for a police-pension program stated the section to be a matter of statewide concern, this court held, "While this is not conclusive on the court, it is persuasive."[7] Later, this court considered the question of additional retainers to teachers who had already retired. The legislature in the

---

[6] See *Morey v. Doud* (1957), 354 U. S. 457, 463, 77 Sup. Ct. 1344, 1 L. Ed. (2d) 485, where the court stated: " 'A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.' "

[7] *Barth v. Shorewood* (1938), 229 Wis. 151, 159, 282 N. W. 89.

act gave as a reason for the measure that it would promote the efficiency of the schools of the state. We there stated:

"That appears also from its own expression contained in the preamble of the act which, while it is not conclusive on the court, is persuasive." [8]

The petitioner points out that this legislation is merely the latest of many attempts to grant property-tax relief to the aged. He cites the fact that the very bill in question repealed an earlier act of the same session of the legislature that was captioned "to provide property tax relief." [9]

We can only conclude that the petitioner would have us hold that merely because previous attempts to accomplish a purpose were deemed in violation of the uniformity clause of the constitution all subsequent actions having a similar purpose, though effected in a different manner, are a mere subterfuge and are necessarily illegal. This conception is erroneous.

It may be admitted that the legislature has for some time sought to assist those of advancing years who, though not completely indigent, were nevertheless oppressed by the impact of the cost of housing, two important elements of which are alternatively rent and property taxes. The attorney general has heretofore held that previous plans were violative of the constitution. [10] But that is not to say that other devices to help persons so situated are so attainted that they must fail. This court has faced similar arguments.

"Respondent's principal contention is that the law by its own terms discloses a purpose on the part of the legislature to grant to certain retired teachers extra compensation for services already performed, in violation of sec. 26, art. IV, Wisconsin constitution, and that what we

[8] *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 566, 61 N. W. (2d) 903.

[9] Ch. 566, Laws of 1963.

[10] 52 Op. Atty. Gen. (1963), 143; 52 Op. Atty. Gen. (1963), 257.

said and held in *State ex rel. Thomson v. Giessel,* 262 Wis. 51, 53 N. W. (2d) 726, is applicable and requires that we declare that ch. 434, Laws of 1953, is invalid. We had for consideration in that case ch. 551, Laws of 1951, by the enactment of which and in unambiguous terms the legislature sought to grant to retired teachers added benefits under the Teachers' Retirement Law without any requirement that they render or hold themselves available for additional future service. His attack must be construed as a suggestion that the 1953 legislature was motivated by a purpose to avoid by subterfuge the effect of the decision in the case to which reference has been made. It is elementary that if the statute appears on its face to be constitutional and valid, we may not inquire into the motives of the legislature, and that all doubts as to its constitutionality must be resolved in favor of its validity.

" 'It is of no legal consequence to say that the plan is a subterfuge and devised for the mere purpose of circumventing the constitution. That may be admitted without answering the question thus presented one way or the other.' *Loomis v. Callahan,* 196 Wis. 518, 524, 220 N. W. 816.

"That we might suspect that the real purpose of the legislature in enacting ch. 434, Laws of 1953, was to accomplish what it failed to accomplish by its enactment of ch. 551, Laws of 1951, and which in the former case we declared to be invalid, is immaterial. In *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159, a statute, sec. 4444*g,* Stats. 1923, seeking to limit the height of buildings on property surrounding the state capitol was held to be unconstitutional. Following that decision the legislature by ch. 424, Laws of 1923, repealed sec. 4444*g* and enacted sec. 4444*f* which, though quite similar in its terms, made some changes in the provisions of sec. 4444*g*. In *Building Height Cases,* 181 Wis. 519, 195 N. W. 544, sec. 4444*f* was attacked again upon constitutional grounds. It was contended that the history of the legislation showed conclusively that its purpose was to evade the decision in the *Piper Case, supra,* and to accomplish by indirection that which could not be done directly. To that the court answered (p. 529) :

" 'It is further contended that the law is invalid because the legislature enacted it to accomplish what it failed to accomplish by sec. 4444*g,* Stats. 1921, which

was held unconstitutional in *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159. There is ample reason to suspect that a desire on the part of the legislature to limit the height of buildings around the Capitol Square in the city of Madison prompted the enactment of this law. But the motives which prompted the legislature to exercise its power in this respect are not subject to judicial review, approval, or condemnation.' " [11]

In any event the duty of this court is not to impugn the motives of the legislature, but rather, if possible, to so construe the statute as to find it in harmony with accepted constitutional principles. In *Barth v. Shorewood,* we quoted with approval the declaration of the United States supreme court in *National Labor Relations Board v. Jones & Laughlin Steel Corp.* (1937), 301 U. S. 1, 30, 57 Sup. Ct. 615, 81 L. Ed. 893:

" 'The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same.' " [12]

"Our search must be for a means of sustaining the act, not for reasons which might require its condemnation." [13]

Although the act is presumptively valid, we, nevertheless, must look to the substance of the act to determine whether the legislature's action is in violation of the rule of uniformity. [14]

We see nothing therein that indicates a violation of the rule.

Basically and in fact this is a relief measure, enacted under the police power of the state. The act takes shelter, a major cost-of-living item, as a factor upon which relief

[11] *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 564, 61 N. W. (2d) 903.

[12] *Supra,* footnote 7, page 163.

[13] *State ex rel. Thomson v. Giessel, supra,* page 565

[14] *Loomis v. Callahan* (1928), 196 Wis. 518, 220 N. W. 816.

is predicated. Important components of shelter cost are alternatively rent or property taxes. Additionally, assistance is available only to those elderly persons on the very verge of poverty—those whose *household* income, not just the income of the individual, is not in excess of $3,000.

This is in no way a property-tax law, for if the claimant does not in fact pay taxes, but instead pays rent, he is still entitled to relief. His landlord, however, pays taxes on the property occupied without abatement, since the relief is keyed to the individual and not to the property. If he does owe property taxes, he is obliged to pay them in full, and his property tax liability and the amount collected by the municipality is in no way reduced by this legislation. In the event relief is granted to the claimant, the payment is made either as a credit against income taxes, or from an appropriation of the state's general fund, whose connection with any property tax is remote. Property-tax receipts and disbursements are unaffected. The relief granted is to the aged needy and is not property-tax relief.

The administration of this law is in no way related to the collection of property taxes; rather, the granting of relief is tied in with the mechanics of the income-tax administration. A tax return must be filed to prove eligibility, but the claimant need not be an income taxpayer to receive relief from the general fund. The fact that he may receive a rebate of his income taxes is merely a convenient method of the state meeting its relief obligation under the act. In any event, rule of uniformity does not apply to the income tax.[15]

The petitioner urges that the recent case of *Ehrlich v. Racine* (1965), 26 Wis. (2d) 352, 132 N. W. (2d) 489, resolves this case in his favor. We view *Ehrlich* in a very different light. *Ehrlich* involved a contract, not a legis-

---

[15] *State ex rel. Atwood v. Johnson* (1919), 170 Wis. 218, 175 N. W. 589.

lative act. That contract provided that for a ten-year period any property tax paid in excess of that based on an agreed valuation was to be rebated. The agreement was directly related to specific property taxes and particular property, but additionally and more importantly that agreement purported to bargain away the city's police power to levy taxes. This a city cannot do. We do not consider *Ehrlich* determinative of this case.

We conclude that ch. 580 of the Laws of 1963 does not deny equal protection of the laws to those who are denied its benefits, and that the act, as a relief measure, is not subject to the constitutional restrictions requiring uniformity of taxation.

*By the Court.*—Demurrer of the respondents is sustained and the complaint of the petitioner is dismissed.