DAVID ADAMANY, Chairman State Elections Board
In an opinion to your predecessor on August 16, 1976, 1 considered the effect of the U.S. Supreme Court decision inBuckley v. Valeo (1976), 96 S.Ct. 612, on the state's campaign finance law. I determined that the provisions of sec. 11.31, Stats., imposing disbursement limits on candidates were invalid as violative of the First Amendment rights of free speech and association. You now ask whether the disbursement figures in see. 11.31, Stats., may nevertheless be used as a standard to calculate contribution limits. Specifically, you inquire whether sec. 11.26 (1) (d) and 11.26 (2), which provide for determination of contribution limits by individuals and committees, respectively, by use of a percentage of the invalid disbursement limits in sec. 11.31, Stats., may continue to be enforced. You also inquire about see. 11.26 (9), Stats., which provides that no candidate may accept more than 65 percent of the value of his total authorized disbursement from committees, now that candidates are no longer subject to a ceiling on total disbursements.
REFERENCE TO INVALID SECTIONS
Section 11.26 (1) (a), (b) and (c), Stats., sets specific dollar limits on individual contributions to candidates for the following offices:
 "(1) No individual may make any contribution or contributions, directly or indirectly, to a candidate for election or nomination to any of the following offices and to any *Page 238 
individual or voluntary committee under s. 11.06 (7) acting in support of such a candidate to the extent of more than a total of the amounts specified per candidate:
 "(a) Candidates for governor, lieutenant governor, secretary of state, state treasurer, attorney general, state superintendent of public instruction and justice of the supreme court, $10,000.
"(b) Candidates for state senator, $1,000.
"(c) Candidates for representative to the assembly, $500."
Section 11.26 (1) (d), Stats., limits individual contributions to candidates for all other state and local offices to "5% of the value of the candidate's authorized disbursement limitation under s. 11.31, or $100, whichever is greater."
In sec. 11.26 (2), Stats., committee contributions are similarly restricted:
 "(2) No committee other than a political party committee may make any contribution or contributions, directly or indirectly, to a candidate for election or nomination to any of the following offices and to any individual or voluntary committee under s. 11.06 (7) acting in support of such a candidate to the extent of more than a total of the amounts specified per candidate:
 "(a) Candidates for governor, lieutenant governor, secretary of state, state treasurer, attorney general, state superintendent of public instruction and justice of the supreme court, 4% of the value of the candidate's authorized disbursement limitation under s. 11.31.
 "(b) Candidates for other state and local offices, 5% of the value of the candidate's authorized disbursement limitation under s. 11.31."
Section 11.26 (9), Stats., provides:
 "No candidate may receive more than 65% of the value of his total authorized disbursement limitation under s. 11.31 from all other committees subject to a filing requirement, including political party committees." *Page 239 
The court in Buckley expressly approved contribution limits on individuals as well as committees. Though all the limits in question in Buckley were expressed in specific dollar amounts, there is no suggestion that a contribution limit expressed as a percentage of another figure is constitutionally suspect. In fact, the Buckley court expressed the opinion that the Congress' failure to engage in "fine tuning" in determining the contribution limits for various federal offices does not invalidate the legislation. Buckley at 640. The question remains, however, whether the validity of sec. 11.26 (1) (d), (2), and (9) is affected by the fact that they provide for determination of contribution limits by use of a percentage of the invalid disbursement limits in sec. 11.31.
It is my opinion that it is not. I must caution you however, that the law in this area is far from clear and the Wisconsin Supreme Court might take one of several approaches when faced with this question.
A statute invalid by reason of its unconstitutional nature may be viewed as void ab initio. See Bonnett v. Vallier (1908),136 Wis. 193, 200, 116 N.W. 885. "[T]he [invalid] act, in legal contemplation, is as inoperative as though it had never been passed, or as if the enactment had never been written, and it is regarded as invalid, or void, from the date of enactment." 16 C.J.S. Constitutional Law, sec. 101, pp. 471, 472. If we must treat sec. 11.31, Stats., as though it never existed, then sec.11.26 (1) (a), (2), and (9), Stats., would be rendered a nullity, since they are dependent on sec. 11.31. A reference in one statute to an invalid statute, if viewed as never having existed, is a reference to nothing.
There is also authority for the proposition that where a statute is declared unconstitutional, all acts whose effectiveness is made conditional on its validity are likewise invalid. 16 C.J.S. Constitutional Law, sec. 101a, p. 474. It might be argued that the literal dependence of sec. 11.26 (1) (d), (2), and (9), Stats., on sec. 11.31, Stats., makes the effectiveness of those sections conditional on the validity of sec. 11.31, Stats. Since sec. 11.31 is invalid, it may be argued that those sections referring to it to compute contribution limits are a nullity. In layman's terms, once the expenditure limit is voided there is nothing to multiply the percentage contribution limitations with; i.e, 65% X 0 = 0. *Page 240 
On the other hand, there is reason to believe that the rule in Wisconsin on the incorporation of repealed statutes by reference, set forth in Union Cemetery v. Milwaukee (1961), 13 Wis.2d 64,68, 108 N.W.2d 180, may control in the present situation:
 ". . . When the adopting statute incorporates an earlier statute or a limited and a particular provision thereof by specific reference, such incorporation takes the statute as it existed at the time of incorporation and does not prospectively include subsequent modifications or a repeal of the incorporated statute or portions thereof."
See also 2A Sutherland, Statutory Construction (4th Ed.), sec.51.08; 35 OAG 235 (1946), 35 OAG 362 (1946). While the effect of invalidation of a statute on the ground of unconstitutionality is not identical to that of repeal of a statute, the principle of statutory construction set forth above may apply in both cases. Reference to an invalid statute to fill in a legislative detail may be as permissible as reference to a repealed one. If so, absent a strong showing of legislative intent that the contribution limits and the disbursement limits must function interdependently, the contribution limits might be upheld.
I am persuaded that it is my duty to adopt this latter view in support of the validity of these sections. It is consistent with the cardinal rule of statutory construction to save statutes wherever possible and the apparent legislative intent to enact a reasonable scheme of contribution limits. So long as there is a reasonable chance of preserving legislation as against the contention that it is void I believe that it is the duty of the Attorney General to do so.
However, I do not rule out the possibility of a court striking down the sections in question as a nullity because of their dependence on a statute which is void ab initio. So far, our research has disclosed that our Supreme Court has not faced this precise issue. The doubts about the validity of the sections are significant and will certainly be raised should you attempt prosecution under these sections. Although I will assist you and defend the application of these sections it would be preferable to avoid the uncertainty, litigation and appeals which will attend enforcement of the statute in its present form. Therefore, I urge you to seek remedial legislation to remove all doubts about the validity of contribution limits which are presently dependent on the unconstitutional disbursement limits. *Page 241 
LEGISLATIVE INTENT
Even though these sections may be separable and stand independent of the expenditure limitations the further question of whether the legislature would have intended them to continue in the absence of expenditure limits must be answered.
My reasoning in support of the continued validity of these sections follows. It is well established that a preamble or declaration of policy set forth by the legislature is highly instructive of the legislative purpose. State ex rel. Harvey v.Morgan (1966), 30 Wis.2d 1, 139 N.W.2d 585. In sec. 11.001, Stats., entitled "Declaration of Policy," the legislature addresses several kinds of problems in campaign financing, and sets forth the goals hoped to be achieved by the reforms in ch. 11, the state's campaign finance law. One of the stated objectives is to prevent candidates from becoming "overly dependent on large contributions," i.e., to alleviate the potential corrupting influence of large private contributions. This objective is largely capable of being achieved by the contribution limits alone, without concurrent expenditure limits. Thus, there is strong evidence from the Act itself that the legislature would have dealt with the matter of contribution limits regardless of the validity of the disbursement limits.
You note that the court in Buckley recognized that federal contribution limits are severable from and may function independently of expenditure limits. In fact the Buckley court was influenced by the fact that the contribution limits and disclosure provisions remained to serve the government's valid interest in alleviating the corrupting influence of large contributions. Buckley at 647-8. If the contribution limits in question are invalid, the chief means of eliminating corruption brought about by large contributions will vanish, at least regarding individual contributions to local candidates and committee contributions to all candidates. Such a result seems to be contrary to legislative intent.
The 65 percent committee contribution limit may also reflect a legislative desire to deter candidacies based solely on the support of special interest groups. The limit effectively obliges candidates to seek out individual contributions, thereby ensuring that candidates expending large sums have a broad base of popular support and simultaneously promoting individual involvement in the political process. The absence of disbursement limits does not affect the attainment of these objectives. *Page 242 
CONSTITUTIONALITY OF SEC. 11.26 (9)
A more difficult question is posed by your inquiry regarding the constitutionality of sec. 11.26 (9), Stats., which provides:
 "(9) NO candidate may receive more than 65% of the value of his total authorized disbursement limitation under s. 11.31 from all other committees subject to a filing requirement, including political party committees."
Unlike sec. 11.26 (1) (d) and (2), this section is not, strictly speaking, a contribution limit. Rather it has aspects of a contribution limit, an expenditure limit, and a source restriction. In my prior opinion I stated that I believed that this provision of the law was now a nullity since it was dependent upon the invalid disbursement limitations. In light of the discussion above I now withdraw that opinion. However, several new constitutional questions not considered in that opinion are raised if sec. 11.26 (9) is valid.
The court in Buckley approved the concept of limits on contributions by individuals and committees. In effect, sec.11.26 (9) does not operate to impose a maximum dollar amount on each committee's support of a particular candidate. Rather, it totally prohibits contributions by committees to candidates who have reached the committee financing limit. Thus, it is more restrictive than the contribution limits approved by the court inBuckley. The provision also has aspects of a disbursement limitation on the candidate, in that it disallows an entire category of contributions to him once he has reached a certain dollar amount of receipts from that group. Expenditure limits were expressly disapproved by the court in Buckley.
On the other hand, the government interests manifested in the enactment of the 65 percent committee contribution limit appear to be strong. Presumably the legislature felt a need to encourage candidacies based on broad popular support, rather than on the backing of special interest groups and political parties. The governmental interest in promoting disclosure in the political process is also indirectly served, since any candidate who spends more than 65 percent of his disbursement limitation will have to record some individual contributions. These will provide more particularized information about a candidate's source of support. *Page 243 
There is no federal counterpart to the 65 percent limit, and the Buckley case itself does not resolve the question of validity. There is, of course, a strong presumption that a regularly enacted statute is valid and constitutional. In re Cityof Beloit (1968), 37 Wis.2d 637, 155 N.W.2d 633. In the absence of convincing evidence of invalidity, I must conclude that the statute is probably constitutional.
In summary, although the constitutionality of the 65 percent limit is, in my opinion, somewhat doubtful the board should continue to enforce it. I hereby withdraw that portion of my opinion to you of August 16, 1976, that advised you to consider sec. 11.26 (9) as a nullity. Other contribution limits are probably valid and enforceable although substantial doubt exists because of their reliance or expenditure limitations which are now void.
BCL:DH