BONNEVILLE ESTATE, Petitioner-Appellant, v. DEPARTMENT OF REVENUE, Respondent.

Supreme Court

*No. 77–003. Submitted on briefs September 12, 1979.—*
*Decided October 9, 1979.*
(Also reported in 284 N.W.2d 52.)

For the appellant the cause was submitted on the brief of *Loyd W. Bonneville* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John E. Armstrong,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J.  The issue presented on appeal is the constitutionality of that portion of sec. 71.09 (7) (b), Stats., which provides that "the right to file claim [for homestead credit] . . . shall be personal to the claimant and shall not survive his death."[1]

---

[1] Sec. 71.09 (7) (b), Stats., provides:

"71.09 (7) . HOMESTEAD CREDIT. The purpose of this subsection is to provide credit to certain persons who own or rent their home-

The facts are uncontested. Bergliot G. Bonneville suffered a stroke on November 18, 1974; she died on January 6, 1975. Her son, Loyd W. Bonneville, was appointed as her guardian in November, 1974, and as personal representative of her estate in February, 1975. On April 15, 1975, the personal representative filed a homestead credit claim for the year 1974 with the Wisconsin Department of Revenue (Department) and claimed a homestead credit of $334. The claim was denied by the Department on the ground that sec. 71.09(7)(b), Stats., requires that the claim be filed during the lifetime of the claimant and that death extinguishes the right to file for homestead credit.

The Tax Appeals Commission sustained the Department's interpretation of sec. 71.09(7)(b), Stats. The personal representative appealed to the circuit court which affirmed the Commission's interpretation of the statute and declared the statute constitutional. We affirm the judgment of the circuit court.

The personal representative asserts on appeal that the statutory provision limiting homestead credit to a claimant who files before her death constitutes an unreason-

---

stead, through a system of income tax credits and refunds, and appropriations from the general fund.

". . .

"(b) The right to file claim under this subsection shall be personal to the claimant and shall not survive his death, but such right may be exercised on behalf of a claimant by his legal guardian or attorney-in-fact. When a claimant dies after having filed a timely claim the amount thereof shall be disbursed to another member of the household as determined by the secretary of revenue. If the claimant was the only member of his household, the claim may be paid to his executor or administrator, but if neither is appointed and qualified within 2 years of the filing of the claim, the amount of the claim shall escheat to the state."

■■■■

able and arbitrary classification which violates the constitutional guarantee of equal protection of the laws.[2]

■■

This court has repeatedly stated that all legislative acts are presumed constitutional, that a heavy burden is placed on the party challenging constitutionality, and that if any doubt exists it must be resolved in favor of the constitutionality of a statute. When the challenger asserts that a statutory classification is violative of the equal protection clause, he or she must prove abuse of legislative discretion beyond a reasonable doubt. *Stanhope v. Brown County,* 90 Wis.2d 823, 837, 280 N.W.2d 711 (1979); *State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843 (1979); *WKBH Television, Inc. v. Dept. of Revenue,* 75 Wis.2d 557, 566, 250 N.W.2d 290 (1977); *State ex rel. La Follette v. Reuter,* 36 Wis.2d 96, 111, 153 N.W.2d 49 (1967).

■■

The parties agree that the appropriate test for reviewing the statutory classification of claimants under this statute is whether there is a rational basis for the classification. The United States Supreme Court described the "rational basis" test in *McGowan v. Maryland,* 366 U.S. 420, 425, 426 (1961):

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the

---

[2] United States Constitution, Amend. 14: ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

Wisconsin Constitution, Sec. 1, Art. I: "DECLARATION OF RIGHTS. Equality; Inherent rights. SECTION 1. All men are born equally free and independent . . . ."

fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

In *Omernik v. State,* 64 Wis.2d 6, 19, 218 N.W.2d 734 (1974), we said:

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts to determine."

The personal representative points out that if Bergliot Bonneville or her guardian had filed a claim sometime between January 1 and January 5, the claim would be valid. However the claimant would not personally benefit from the homestead credit. Section 71.09 (7) (b) provides that if the claimant dies after having filed a timely claim the credit shall be disbursed to a member of the claimant's household or, if none, to the claimant's executor or administrator. The personal representative argues that because the statute allows payment to a member of the household or to the claimant's estate, it is clear that the purpose of the statute is not merely to aid claimants who live beyond the tax year in which the expenses were incurred, but also to reimburse a member of the claimant's household or the claimant's estate for the expenses incurred in the prior year. If the intent of the legislature is to reimburse a member of the claimant's household or her estate for the financial drain of the prior year's expenses then, argues the personal representative, cutting off the claim of a person who dies before filing the claim has no rational relation to the achievement of the legislature's objective and is unconstitutional.

We do not accept the personal representative's interpretation of the legislative purpose of the homestead credit act. Section 71.09 (7) (b) begins by stating that

"the right to file claim . . . shall be personal to the claimant and shall not survive his death, but such right may be exercised on behalf of a claimant by his legal guardian or attorney in fact." Although the legislative purpose of the homestead credit act is not stated expressly in the statute or in the documents regarding the legislative history of the enactment, we conclude that a reasonable interpretation of the language of sec. 71.09 (7) (b) just quoted is that the legislature intended the homestead credit act to grant relief[3] to a claimant herself and accordingly required that the claimant must be alive during the year following the tax year for which credit is claimed.[4]

It is a policy decision for the legislature to determine how long the claimant must live beyond the tax year during which the expenses qualifying for homestead credit were incurred in order to qualify for relief. There is no simple, precise, mathematical, or logical way to determine the appropriate period of survival. The legislature probably chose the date of filing the claim as the date on which the claimant must be alive because the date of filing is a convenient one for purposes of administration of the law.

---

[3] This court concluded in *State ex rel. Harvey v. Morgan*, 30 Wis.2d 1, 10, 139 N.W.2d 585 (1966), that "this enactment [of the Homestead Credit Act] is a relief law in its purpose and in its operation." The personal representative notes that sec. 71.09 (7) (b), Stats., was amended to replace the term "relief" with "credit" (*see* ch. 90, Laws of 1973, sec. 355). This verbal change does not alter our reasoning in the *Morgan* case.

[4] That the legislature is tying the credit to the status of the claimant during the year following the tax year for which credit is claimed is also seen in sec. 71.09(7)(p), Stats. 1975, which disallows the credit "to any claimant who at the time of filing such claim is a recipient of assistance under s. 49.19 or is receiving general relief from any municipality or county."

We must accept this kind of legislative decision "unless we can say that it is very wide of any reasonable mark." *Louisville Gas & Electric Co. v. Coleman*, 277 U.S. 32, 41 (1928). As this court noted in *State ex rel. Harvey v. Morgan*, 30 Wis.2d 1, 9, 139 N.W.2d 585 (1966):

"[I]n all legislative classifications there are always cases just within or just without the borderlines. Undoubtedly, in most classifications the line of demarcation fixed by the legislature is not the only one that could have been selected. Within the limits of what is reasonable it is for the legislature and not for the court to determine the exact point at which a classification is to operate. . . ."

The latter part of sec. 71.09 (7) (b), Stats., provides for the distribution of the claim on the death of the claimant:

"When a claimant dies after having filed a timely claim the amount thereof shall be disbursed to another member of the household as determined by the secretary of revenue. If the claimant was the only member of his household, the claim may be paid to his executor or administrator, but if neither is appointed and qualified within 2 years of the filing of the claim, the amount of the claim shall escheat to the state."

These provisions do not, as the personal representative asserts, show that the legislature's goal is to reimburse the claimant's estate or a member of her household. We view these provisions as rationally related to the legislative purpose of providing relief to a claimant who is alive for at least part of the year following the tax year for which the credit is claimed. Once the legislature proclaims that the claimant need live only until the claim is filed—and not until it is paid—in order to qualify for the credit, it is incumbent on the legislature to set forth rules for distributing the credit in the event of the death

of the claimant after the claim is filed but before the credit is disbursed. Section 71.09(7)(b), Stats., accomplishes this goal; it does not evince a legislative purpose to replenish the claimant's estate, as the personal representative contends.

The circuit court recognized, as does this court, that the case at bar is indicative of the hardship that can result from sec. 71.09(7)(b). However the remedy lies with the legislature, not the courts. The circuit court commented as follows:

". . . It is clear that at the time of the serious stroke the family is far too preoccupied with their concern for the health and well-being of their loved one to consider the application for homestead credit under the terms as required by the statute. This, however, is not part of the judicial function. Policy considerations as to whether or not the homestead credit should be applicable following the death of an individual otherwise eligible may be considered by the Legislature. A desire to avoid such results could compel the Legislature to modify the current state of the law. However, it is for the Legislature to make those determinations of policy and not the Courts of this State."

For the reasons set forth, we conclude that the requirement of sec. 71.09(7)(b) that the claim be filed during the lifetime of the claimant has a reasonable relation to the purposes of the homestead credit act and does not violate state and federal constitutional guarantees.

*By the Court.*—Judgment affirmed.