## MILLER *v.* DEPARTMENT OF TREASURY, REVENUE DIVISION

1. MENTAL HEALTH—CONSTITUTIONAL LAW—PUBLIC INSTITUTIONS—RETARDED PERSONS—PAYMENT FOR CARE—LIABILITY OF RELATIVES—STATUTE.

   Statute establishing liability for financing the care of mentally retarded persons in public institutions providing that the amount which responsible relatives must reimburse the state for institutional care is to be computed from a graduated schedule based on Federal taxable income, *held,* arbitrary, unreasonable, a denial of equal protection, and therefore invalid, because the criterion of net Federal taxable income does not properly reveal the financial ability of relatives to reimburse the state for such care because of legal, economic incentive provisions available which exempt actual income from being included in Federal taxable income and permit those of greater financial ability to reimburse the state less than those of lesser means (PA 1965, No 335, §§ 2–9).

2. MENTAL HEALTH—CONSTITUTIONAL LAW—PUBLIC INSTITUTIONS—RETARDED PERSONS—PAYMENT FOR CARE—LIABILITY OF RELATIVES—LEGISLATURE—DELEGATION OF POWER.

   Statute establishing liability for financing the care of mentally retarded persons in public institutions providing that the schedule used to compute liability is to be based on Federal taxable income as shown on the Federal income tax return, *held,* a violation of constitutional due process and invalid since the law governing the net taxable income of any individual is controlled by the Congress of the United States

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 7–13] 41 Am Jur 2d, Incompetent Persons §§ 55–57, 59.
   41 Am Jur 2d, Poor and Poor Laws § 6.
   Constitutionality of statute imposing liability upon estate or relatives of insane person for his support in asylum.   20 ALR3d 363.
[6] 20 Am Jur 2d, Courts § 32.

and therefore state legislature improperly delegates to the
United States Congress the ultimate determination of the
reimbursement amount; state legislatures cannot delegate their
sovereign powers to the Federal government or to any other
body, and attempts to make future Federal regulations part
of the state law are generally held unconstitutional (PA 1965,
No 335, §§ 2-9).

DISSENTING OPINION

LEVIN, J.

3. MENTAL HEALTH—CONSTITUTIONAL LAW—RETARDED PERSONS—
CARE IN PUBLIC INSTITUTIONS—PAYMENT FOR CARE—LIABILITY OF
RELATIVES—STATUTE.

*Contention that the statute establishing liability for financing
the care of retarded persons in institutions is unconstitutional
because the graduated schedule used to compute the liability
of relatives of the retarded person is based on Federal tax-
able income and denies equal protection of the laws because
certain parents are able to insulate their income from Federal
taxation and reduce or eliminate liability, is based on an un-
proven hypothesis where there is no demonstrable proof that
insulation has occurred in numbers sufficient to justify a con-
clusion that the legislatively selected criterion is unconsti-
tutional; important legislation should not be declared uncon-
stitutional on theoretical grounds where no proof of invidious
discrimination exists (PA 1965, No 335).*

4. MENTAL HEALTH—CONSTITUTIONAL LAW—RETARDED PERSONS—
CARE IN PUBLIC INSTITUTIONS—PAYMENT FOR CARE—LIABILITY OF
RELATIVES.

*Provisions of statute establishing liability for cost of care of
retarded persons in public institutions which provide for
annual redetermination of liability based on Federal taxable
income as shown on the latest return should not be lightly
rejected because this method; (1) is far superior to a once-
and-for-all determination; (2) supplies the readily obtainable,
accurate and current information necessary; (3) is more likely
to reflect ability to pay more accurately than any other easily
available index (PA 1965, No 335, § 9).*

5. MENTAL HEALTH—CONSTITUTIONAL LAW—RETARDED PERSONS—
CARE IN PUBLIC INSTITUTIONS—COST OF CARE—STATUTE—REVIEW.
*The statute establishing liability for care of retarded persons
in public institutions allows ample administrative and judicial
review for those dissatisfied with the amount of liability*

*computed from the schedule; therefore a schedule providing for charges to relatives for care of a retarded person which is based on Federal taxable income is not a denial of due process or equal protection of the law (PA 1965, No 335, § 10).*

6. COURTS—CONSTITUTIONAL LAW—ADMINISTRATIVE DETERMINATION —REVIEW—PROBATE COURT.

*The legislature may properly empower probate courts to review administrative determinations judicially under the constitutional provision that the jurisdiction, powers, and duties of the probate court and the judges thereof "shall be provided by law." (Const 1963 art 6, § 15; PA 1965, No 335, § 10.)*

7. MENTAL HEALTH—CONSTITUTIONAL LAW—RETARDED PERSONS— CARE IN PUBLIC INSTITUTIONS—COST OF CARE—LIABILITY—BASIS FOR DETERMINATION—STATUTE.

*Contention that, because Congress may change the definition of taxable income, the incorporation of the Federal definition of taxable income into the statute establishing liability for financing the care of retarded persons in public institutions is an unconstitutional delegation of power is a theoretical one because (1) only a few factors of the definition, relating to a small number of taxpayers and probably none of those liable, have changed since the act was passed; (2) liability could easily be determined without regard to changes in the act so far; (3) if Congress enacted serious changes in the definition of taxable income the legislature could adopt the change and the Federal definition or reject the change and formulate a new basis of reporting income under the state statute (PA 1965, No 335, §§ 6–8).*

8. MENTAL HEALTH—CONSTITUTIONAL LAW—RETARDED PERSONS— CARE IN PUBLIC INSTITUTIONS—PAYMENT FOR CARE—LIABILITY OF RELATIVES—DETERMINATION OF LIABILITY—STATUTE.

*Provisions of the statute establishing liability for financing the care of retarded persons in public institutions which require that the parent of a retarded person receiving care in a state institution submit a signed copy of his most recent Federal income tax return does not violate the Internal Revenue Code as most courts have concluded that private litigants may be required to produce a copy of their returns; a court should uphold the constitutionality of the act, if at all possible, and adopt a construction of Federal confidentiality provisions*

*which would sustain the legislative requirement (PA 1965, No 335, § 6; 26 USC §§ 6103, 7213[a]).*

9. Mental Health—Constitutional Law—Equal Protection—Retarded Persons—Care in Public Institutions—Liability for Cost—Statute.

> *Provisions of the statute establishing liability for financing the care of mentally retarded persons in public institutions which require reimbursement to the state by certain relatives of retarded persons in amounts computed from the act's reimbursement schedule are not an unconstitutional denial of equal protection of the law merely because they require those of higher income to pay more than those with less, because economic difference is a realistic and acceptable classification where reimbursement is based on a graduated ability to pay schedule, void of the invidious discrimination which would justify a declaration of unconstitutionality (PA 1965, No 335, § 8).*

10. Mental Health—Taxation—Liability for Retardates in Public Institutions.

> *The requirement of the statute establishing liability for financing the care of retarded persons in public institutions that certain relatives of retarded persons reimburse the state for care of those persons in public institutions if they are able is an obligation to provide support for services rendered and not a tax.*

11. Mental Health—Parent and Child—Liability for Retardates in Public Institutions—Equal Protection.

> *Provisions of the statute establishing liability for financing the care of mentally retarded persons in public institutions which require parents and certain other relatives of retarded persons to reimburse the state for their care in public institutions, but which exempt from liability parents of retardates over age 21 and those who have been institutionalized for 15 years do not violate the right of equal protection under the law; parental responsibility for the care of minor children is a universal ethic as is the financial emancipation of competent adults and the legislature is not bound to require reimbursement from parents of retarded adults in order to properly require it from parents of retarded minors, nor is it barred from relieving parents of retardates who have been institutionalized for shorter periods (PA 1965, No 335, § 4).*

12. MENTAL HEALTH—CONSTITUTIONAL LAW—EQUAL PROTECTION—
HANDICAPPED MINORS—CARE IN STATE INSTITUTION—PARENTAL
LIABILITY—COST OF CARE.

> *The legislative decision that parents of retardates in public*
> *institutions must reimburse the state for care given accord-*
> *ing to financial ability does not violate the right to equal*
> *protection of the law because parents of blind and deaf*
> *children are not required to reimburse the state; services*
> *provided one group of afflicted children vary from those*
> *provided other groups and the legislature may properly vary*
> *the quantity and quality of services offered (PA 1965, No 335).*

13. MENTAL HEALTH—CONSTITUTIONAL LAW—RETARDED PERSONS—
CARE IN PUBLIC INSTITUTIONS—COST OF CARE—LIABILITY FOR
COST—EQUAL PROTECTION.

> *The statute establishing liability for financing the care of*
> *retarded persons in public institutions is not unconstitutional*
> *and does not create an unreasonable classification of taxpayers*
> *based on whether or not they are parents of retarded minors*
> *since parents of institutionalized persons receive a special*
> *benefit from the institutions and have a moral duty to provide*
> *for their children when financially able (PA 1965, No 335).*

Appeal from Wayne, Carl M. Weidemann, J. Submitted Division 1 December 5, 1968, at Detroit. (Docket No. 4,832.) Decided June 26, 1969. Leave to appeal granted August 21, 1969. See 382 Mich 775.

Complaint by Donald A. Miller and Geraldine B. Miller, his wife, against the State of Michigan, Department of Revenue, for a determination that Act 335 of the Public Acts of 1965, regarding the liability of relatives for the care and maintenance of mentally retarded persons in state institutions, is unconstitutional and for an injunction to prevent its enforcement. Summary judgment for plaintiffs. Defendant appeals. Judgment affirmed.

*Donald A. Miller,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter, Richard Roesch,* and *James B. Saunders,* Assistant Attorneys General, for defendant.

*Amicus Curiae:* Michigan Association of Retarded Children by *Strom, Hoehn & Shipman* (*Thomas L. Butch,* of counsel).

Before: LESINSKI, C. J., and HOLBROOK and LEVIN, JJ.

HOLBROOK, J. Plaintiffs are parents of a mentally retarded child who was formally committed to the Lapeer State Home and Training School by the Wayne county probate court in January, 1957, and are within the classification of relatives liable for the care and maintenance of their child under the provision of PA 1965, No 335 (MCLA § 330.651 *et seq.,* Stat Ann 1965 Cum Supp § 14.870[101] *et seq.*). Pertinent portions of this act are reprinted in the footnote.[1]

---

[1] "An act relating to the liability of relatives for the care and maintenance of mentally retarded persons admitted to public institutions; and to prescribe the powers and duties of certain public officers.   *  *  *

"Sec. 2.   Notwithstanding the provisions of sections 9a, 11, 13, 18, 18a or 19 of Act No 151 of the Public Acts of 1923, as amended, being sections 330.19a, 330.21, 330.23, 330.28a and 330.29 of the Compiled Laws of 1948, or the provisions of section 2 of chapter 1 of Act No 146 of the Public Acts of 1925, as amended, being section 401.2 of the Compiled Laws of 1948, or the provisions of Act No 146 of the Public Acts of 1925, as amended, being sections 401.1 and 401.21 of the Compiled Laws of 1948, the liability of any relative for the care and maintenance of a mentally retarded person shall be imposed and determined only in accordance with the provisions of this act.   *  *  *

"Sec. 4.   The husband, wife, father and mother of a mentally retarded person shall jointly and severally be liable to the state for the care and maintenance of the committed mentally retarded person until he is 21 years of age or until he has been a patient in

Plaintiff brought this action against the Department of Revenue of the State of Michigan, in the circuit court for Wayne county, claiming that the

a public institution for a total period of 15 years, whichever first occurs.

"For the purposes of this section, in the case of an adopted mentally retarded person, 'father' and 'mother' mean the adopting father and mother. * * *

"Sec. 6. Within 30 days after admission of the patient or the effective date of this act, whichever is later, the relative shall file the signed, completed form with the department of revenue. The form shall be accompanied by a signed copy of the relative's most recent income tax return submitted to the United States internal revenue service. The department of revenue shall bill the relative for the amounts of liability determined under the provisions of this act from the date of admission of the patient or the effective date of this act, whichever is later, through the succeeding June 30. Payments of the amounts shall be made monthly. The first payment shall be made by the end of the month after the mailing of the bill and cover the monthly liability through the end of that month as determined under the provisions of this act.

"Sec. 7. The form shall contain the name of the patient; the name of the institution to which the patient has been admitted; the name and address of the relatives liable for the care and maintenance of the patient under the provisions of this act; the schedule of liability set forth in section 8; the net taxable income of the relative last reported to the United States internal revenue service for federal income tax purposes; the names and ages of dependents of the relative; and such other information as may be required by rules adopted by the department of revenue.

"Sec. 8. (1) The amount of monthly liability of a relative for the care and maintenance of a mentally retarded person under the provisions of this act shall be originally determined by use of the following schedule:

| Net Taxable Income | Monthly Liability | Net Taxable Income | Monthly Liability |
|---|---|---|---|
| $   0 to   4,999 | 0 | $12,500 to 12,999 | 95 |
| 5,000 to   5,499 | 20 | 13,000 to 13,499 | 100 |
| 5,500 to   5,999 | 25 | 13,500 to 13,999 | 105 |
| 6,000 to   6,499 | 30 | 14,000 to 14,499 | 110 |
| 6,500 to   6,999 | 35 | 14,500 to 14,999 | 115 |
| 7,000 to   7,499 | 40 | 15,000 to 15,499 | 120 |
| 7,500 to   7,999 | 45 | 15,500 to 15,999 | 125 |
| 8,000 to   8,499 | 50 | 16,000 to 16,499 | 130 |
| 8,500 to   8,999 | 55 | 16,500 to 16,999 | 140 |
| 9,000 to   9,499 | 60 | 17,000 to 17,499 | 150 |
| 9,500 to   9,999 | 65 | 17,500 to 17,999 | 160 |
| 10,000 to 10,499 | 70 | 18,000 to 18,499 | 170 |
| 10,500 to 10,999 | 75 | 18,500 to 18,999 | 180 |
| 11,000 to 11,499 | 80 | 19,000 to 19,499 | 190 |
| 11,500 to 11,999 | 85 | 19,500 to 19,999 | 200 |
| 12,000 to 12,499 | 90 | 20,000 and over | 210 |

* * *

act was unconstitutional for several reasons and requesting relief from its threatened enforcement.

Both parties moved for a summary judgment stating that there was no issue of fact present in the case and that the matter could be disposed of by ruling on the law. After being furnished thorough briefs by all counsel and hearing arguments, the learned trial judge found the act unconstitutional for several reasons. The State of Michigan appeals.

---

"Sec. 10. If the relative believes that the monthly liability as determined by the schedule does not accurately reflect his current income status or his ability to pay due to changed circumstances or otherwise, the relative may request at any time a determination of liability by the department of revenue. For purposes of the determination, the department of revenue may request the relative to supply all relevant financial information and such additional information as may be provided by rules of the department of revenue. After review of the information, the department of revenue shall establish the monthly liability of the relative. If the relative is dissatisfied with the determination, he may appeal the determination to the probate court of the county of residence of the patient. The probate court shall then determine the liability. *In no case may the liability determined by the department or by the probate court exceed that established by the schedule.* Appeals from the determination of the probate court may be made as in other cases.

"Sec. 11. (1) If a relative liable under this act for the care and maintenance of a patient fails to pay the amount due, the commissioner of revenue may petition the probate court of the county of residence of the patient and thereupon the court may forthwith issue an execution in the amount so stated and the same shall be directed to any sheriff or constable of any county in the state or the commissioner of Michigan state police. An execution shall not be issued by the probate court if an appeal as provided by section 10 is pending before the probate court and shall not be issued until at least 15 days from the final determination of the appeal by the probate court and the final determination of the court is not obeyed by the relative. In addition the commissioner of revenue may bring an action at law wherever the liable relative resides or may be found to recover the amount of payments which the liable relative is delinquent in paying. Before the commissioner of revenue can bring this action of law under this section, he shall be required to show that the relative liable under this act was notified by certified mail of his liability and that a period of at least 15 days has lapsed between the notification date and the date of the commencement of action as provided by this section. The costs of such proceedings shall be assessed against the relative only if the relative is held to be liable under the provisions of this act.

"(2) If a liable relative fails to file a form, the monthly liability of the relative is deemed to be $210."

We need consider here only two reasons asserted concerning unconstitutionality of the act. Some of the other aspects of the case are considered in our opinion in the case of *In re Raseman Estate* (1969), 18 Mich App 91, to which we make reference.

The plaintiffs, in the trial court and here, assert that the reimbursement statute violates the equal protection clauses of our State and Federal Constitutions. In the recent case of *Fox v. Employment Security Commission* (1967), 379 Mich 579, 588, 589, Mr. Justice T. M. KAVANAGH states:

"This Court has held numerous times that the Michigan Const 1908, art 2, § 1, secures the same right of equal protection as does its counterpart in the Constitution of the United States. *Gauthier v. Campbell, Wyant & Cannon Foundry Company* (1960), 360 Mich 510, 514, and cases therein cited. The same provisions in Const 1963, art 1, §§ 1 and 2, must likewise be held to afford the same rights as the Federal equal protection clause.

"There is no doubt that State legislatures have a broad range of discretion in establishing classifications in the exercise of their powers of regulation. However, the constitutional guarantees of equal protection are interposed against discriminations that are entirely arbitrary. In determining what is within legislative discretion and what is arbitrary, regard must be had for the particular subject of the State legislation. There must be a relation between the classification and the purposes of the act in which it is found." *Smith v. Cahoon, Sheriff* (1931), 283 US 553, 566 (51 S Ct 582, 587, 75 L Ed 1264, 1274); *Morey v. Doud* (1957), 354 US 457, 465 (77 S Ct 1344, 1350, 1 L Ed 2d 1485, 1491); *Beauty Built Construction Corporation v. City of Warren* (1965), 375 Mich 229; *Palmer Park Theatre Company v. City of Highland Park* (1961), 362 Mich 326.

In the case of *People v. Chapman* (1942), 301 Mich 584, a statute of this State was challenged as uncon-

stitutionally denying the defendant therein equal protection of the laws. Justice Starr, writing for the Court, stated (pp 597, 598):

"It is well recognized that the legislature may make classifications of persons, provided such classifications are based on substantial distinctions and are in accord with the aims sought to be achieved. (Citing cases.) However, such classification must be neither arbitrary nor capricious, but must rest on reasonable and justifiable foundations. In *Haynes* v. *Lapeer Circuit Judge* (1918), 201 Mich 138, p 141, the rule is stated:

"'"Legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment *and made uniform in its operation upon all persons of the class to which it naturally applies;* but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation." '

"See, also, *Davidow* v. *Wadsworth Manfg. Co.* (1920), 211 Mich 90, 97–102; *Peninsular Stove Co.* v. *Burton* (1922), 220 Mich 284, 286; *Smith* v. *Wayne Probate Judge* (1925), 231 Mich 409." (Emphasis supplied.)

The legislature, under the provisions of the act, endeavored to require those of the class liable to reimburse the State in accord with their financial ability to do so. By making the *net taxable income* as shown by their Federal income tax return the criteria for the amount of reimbursement in all cases (insofar as maximum payment is concerned) the legislature has actually permitted an opposite re-

sult.   Our Federal income tax law has several legal
economic incentive provisions exempting actual in-
come of a taxpayer from being included in *net tax-
able income* inter-alia, all interest income from mu-
nicipal bonds, 1/2 of income profit derived from long
term capital gains, and partial depreciation credit
and income depletion allowances for those in certain
businesses.   The inclusion of such actual income not
reflected in net taxable income would require many
of sufficient ability to reimburse the maximum
amount set forth in the act even though their *net
taxable income* may be less than $5,000.   It is ob-
vious that any reimbursement statute such as the
one under consideration, to be uniform, should not
exclude relatives who have actual ability to reim-
burse.   A formula should not be tied to *net taxable
income* shown by a Federal tax return that permits
those of greater financial ability to reimburse the
State less than others of lesser financial ability in
the same class.   It permits those more able to pay
to reimburse the State less or possibly nothing at all.

We find that PA 1965, No 335 does not accom-
plish the purpose of the act, *i.e.,* to fairly and uni-
formly charge those of sufficient ability to reimburse
the State in a reasonable manner.   Many illustra-
tions of this truth can be made but we deem them
unnecessary.   *Net taxable income* under the Federal
income tax law does not properly reveal the financial
ability of the relative to be charged to reimburse
the State for the costs of maintaining the patient.

We conclude that the act is arbitrary, unreason-
able and in conflict with the equal protection clause
of our constitution and therefore is invalid.

The plaintiffs also assert that the act is uncon-
stitutional in that there is lack of due process in its
operation.

The legislature has provided for liability, total or partial, on a formula based on the *net taxable income* of a relative as shown by his or her Federal income tax return. The law determining *net taxable income* of any individual is controlled by the Congress of the United States. Thus the legislature has delegated to the Congress the ultimate determination of the amount to be reimbursed by each such relative.

In *Auditor General* v. *Hall* (1942), 300 Mich 215, 224, Mr. Justice BUTZEL stated:

"In far more traditional forms of action both criminal and civil, length of sentences and the amount of damages may vary materially before different judges and juries. As long as there is not an abuse of discretion and a judge remains within the limits of the law, we find there is due process. *In re Brewster Street Housing Site* (1939), 291 Mich 313, 340, we approved of the following citation from *Cincinnati, W. & Z. R. Co.* v. *Commissioners of Clinton County* (1852), 1 Ohio St 77, 88, 89:

" 'The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

In the case of *Dearborn Independent, Inc.* v. *City of Dearborn* (1951), 331 Mich 447, it is stated on pp 454, 455, as follows:

"The requirement in said statute, above italicized, of admission by the post-office department as a second-class mail matter would make the validity of the publication of legal notices depend upon the future as well as present regulations of the United States post-office department. In that respect it offends against the Constitution of our State (1908), art 5, § 1, which, among other things, provides:

" 'The legislative power of the State of Michigan is vested in a senate and house of representatives.'

"The act in question unlawfully attempts to delegate to the United States post-office department the determination of the qualifications of a newspaper to publish legal notices. See *King* v. *Concordia Fire Ins. Co.* (1905), 140 Mich 258 (6 Ann Cas 87), (syllabus 5) as follows:

" 'The Michigan standard policy law of 1881 (Act No 149), providing for an insurance commission and authorizing it to prescribe a standard form for fire insurance policies, is unconstitutional because attempting to delegate legislative powers in violation of section 1 of article 4 of the Constitution.'

"At the time of the decision in the *King Case* the Constitution of 1850 was in effect, which, however, contained substantially the same delegation of the legislative power (Const 1850, art 4, § 1) as we have above quoted from the Constitution of 1908, which latter was in effect when the statute, above quoted (CL 1948, § 691.611), was enacted and also when the said statute was amended in 1933 in the form above quoted. See, also, *In re Brewster Street Housing Site* (1939), 291 Mich 313, in which, at page 340, the *King Case, supra,* is cited as establishing the law in this State upon the subject of unconstitutional delegation of legislative power. See, also, *Colony Town Club* v. *Unemployment Compensation Commission* (1942), 301 Mich 107, 113.

" 'The State legislatures cannot delegate their sovereign powers to the Federal government. While a statute is valid which adopts existing statutes, rules, or regulations of Congress by reference, an attempt to make future regulations of Congress part of the State law is generally held to be unconstitutional.' 16 CJS, p 343.

" 'Since under the doctrine of the separation of the powers of government the lawmaking function is assigned exclusively to the legislature, it is a cardinal principle of representative government that except when authorized by the Constitution—as may

be the case in reference to municipal corporations—
the legislature cannot delegate the power to make
laws to any other authority or body [citing deci-
sions in 30 States]. Any attempt to abdicate legis-
lative power in any particular field, although valid
in form, is unconstitutional and void.' 11 Am Jur
2d, pp 921, 922, § 214."

Also, see, Sutherland Statutory Construction, § 520,
p 551.

Although we realize that the Congress may not
know or consider its direct power or discretion
to vary liability under the act, it still violates the
fundamental requirement of constitutional due proc-
ess and for this reason is invalid.

The trial court ruled the act unconstitutional for
other reasons which we deem unnecessary to con-
sider,[2] except to note that the statute fails to provide
for a notice of hearing and a hearing before the ad-
ministrative agency to determine in the first instance
the liability of the relatives.[3]

Limited to the reasons set forth in this opinion, we
affirm the trial court in its determination that PA
1965, No 335 is unconstitutional and invalid.

No costs, the construction of a statute being in-
volved.

Lesinski, C. J., concurred.

Levin, J. (dissenting). The plaintiffs claim that
the act denies equal protection of the laws because it
"soaks the rich." The majority adopts plaintiffs'
conclusion and holds that the act does indeed deny
equal protection but for a converse reason—because

---

[2] In re Raseman Estate, ante, p 91.
[3] Trellsite Foundry & Stamping Company v. Enterprise Foundry
(1961), 365 Mich 209.

its impact can be avoided or reduced by those with tax-sheltered incomes. I find myself in disagreement with both views.)

The act, PA 1965, No 335 (MCLA § 330.651 *et seq.* [Stat Ann 1965 Cum Supp § 14.870(101) *et seq.*]), requires parents of mentally retarded minors residing in State institutions to reimburse the State for the cost of their care.[1] The amount of the liability is "originally determined" by the use of a graduated schedule based on the parent's taxable income as computed on his last Federal income tax return. Under the schedule those with a taxable income of less than $5,000 have no liability to make any reimbursement for the cost of caring for their children. Parents with a taxable income of $5,000 are required to pay $20 monthly. The schedule continues to graduate in increments of $500 of taxable income and monthly payments of $5 or $10 per increment so that those with a taxable income of $20,000 or more are required to pay $210 per month.[2]

If a parent believes that his monthly liability determined under the schedule "does not accurately reflect his current income status or his ability to pay due to changed circumstances or otherwise," he may request a determination of liability by the department of revenue. If dissatisfied with the department's determination, he may appeal to the probate court of the county of residence of the patient. The probate court's determination is appealable "as in other cases."[3]

The monthly payment determined by the department or the probate court may not in any event ex-

---

[1] Husbands and wives of mentally retarded persons are also liable but this is, no doubt, a *de minimis* category. MCLA § 330.654 (Stat Ann 1965 Cum Supp § 14.870[104]).

[2] MCLA § 330.658 (Stat Ann 1965 Cum Supp § 14.870[108]). No claim is made, nor is there any evidence, that the cost of providing care is less than $210 per month.

[3] MCLA § 330.660 (Stat Ann 1965 Cum Supp § 14.870[110]).

ceed that established by the statutorily prescribed schedule.[4] This, of course, means, as the majority point out, that if a parent has insulated his income from Federal taxation he may significantly reduce or escape altogether his liability even though his real income is the same or greater than that of other parents whose income is not so tax sheltered.

The question before us, however, is not whether the reimbursement formula chosen by the legislature operates with absolute fairness or whether we can conceive of a case where a parent may escape its snare but rather whether it is a rational formula which produces generally fair results.[5] The plaintiffs have not demonstrated, nor is there any evidence that the use of Federal taxable income as the "original" and maximum basis for determining liability to make reimbursement under this act has permitted particular parents to avoid or disproportionately reduce their reimbursement liability, let alone that this has occurred in such a significant number of cases as would justify this Court's conclusion that the legislatively selected criterion is unconstitutional. The majority's thesis, absent such a showing, is based on an unproven hypothesis. Important legislation should not be declared unconstitutional on theoretical grounds. "The point is that lack of equal protection is found in the actual existence of an invidious discrimination [citations omitted], not in the mere possibility that there will be like or similar cases which will be treated more leniently." *Queenside Hills Realty Co., Inc.* v. *Saxl* (1945), 328 US 80, 84, 85 (66 S Ct 850, 90 L Ed 1096).[6]

---

[4] MCLA § 330.660 (Stat Ann 1965 Cum Supp § 14.870[110]).

[5] See *Mallatt* v. *Luihn* (1956), 206 Or 678 (294 P2d 871); *Dominion Hotel, Inc.* v. *Arizona* (1918), 249 US 265 (39 S Ct 274, 63 L Ed 597); *Norvell* v. *Illinois* (1963), 373 US 420, 423 (83 S Ct 1366, 10 L Ed 2d 456).

[6] See *McGowan* v. *Maryland* (1961), 366 US 420, 426, 428 (81 S Ct

The annual redetermination of the parent's liability provided for in this act is far superior to the practice under prior law of making a once-and-for-all determination, as is well illustrated by what occurred in the companion case of *In re Raseman Estate* (1969), 18 Mich App 91.[7] For annual redetermination to be administratively feasible, accurate current information as to a parent's financial status must be readily obtainable. One can well understand the legislature's conclusion that in most cases the parent's taxable income on his last Federal tax return is likely to reflect his ability to pay more accurately than any other readily available index.[8] We should not lightly reject this legislative judgment.

Contrary to the plaintiffs' contentions, the statute makes ample provision for administrative and judicial review at the instance of a parent who claims that application to him of the statutory schedule would require payment of an excessive amount. The standard on review, the parent's current income status and ability to pay, is clearly enunciated as the

---

1101, 6 L Ed 2d 393); *Hodge Drive-It-Yourself Co.* v. *Cincinnati* (1931), 284 US 335, 338 (52 S Ct 144, 76 L Ed 323).

[7] The annual redetermination is provided for in § 9, MCLA § 330.659 (Stat Ann 1965 Cum Supp § 14.870[109]).

Under MCLA § 330.21 (Stat Ann 1956 Rev § 14.811), the relatives of a mentally diseased person admitted to a State institution can, if they have sufficient means for that purpose, be required by court order to pay for the care and maintenance of such person in the State institution and the court shall "specify the amount" so to be paid. In *Raseman* an order was entered committing the mentally diseased person as a "full-pay patient" and the estate of the patient and his father were required to pay "one hundred per cent of the cost" of his maintenance. After entry of the order, some payments were made but over the years large arrearages accumulated during which period the daily cost of care increased by over 400% without any re-evaluation by the court of the ability of the father to pay such increased amounts. Our decision authorized a re-evaluation on remand.

[8] *Cf. Mallatt* v. *Luihn, supra; Peringer* v. *Territory of Alaska* (CA 9, 1955), 218 F2d 490, 491.

controlling guideline.[9]  There are adequate safe-
guards for the protection of persons aggrieved by
the administration of the act.[10]

Plaintiffs assert that the legislature may not con-
fer on the probate court the power to review admin-
istrative determinations.  However, the Constitu-
tion expressly provides that the jurisdiction, powers
and duties of the probate court "shall be provided
by law."  Const 1963, art 6, § 15.  Since under
this statute the probate court's power of review is
to be exercised judicially, we need not consider the
question which evenly divided our Supreme Court
in *Buback* v. *Governor* (1968), 380 Mich 209.

Nor can I accept the majority's conclusion that
because Congress may change the definition of tax-
able income, the incorporation by reference of the
Federal definition was an unconstitutional delega-
tion of power by the Michigan legislature.  Again,
this objection is entirely theoretical.  Since the pas-
sage of the act now before us, there has been no
change in the definition of the factors which when
combined determine taxable income except for a

---

[9] See footnote 3.

[10] That the constitution requires safeguards, not necessarily
standards, and that a hearing take place before liability becomes
fixed, not that the hearing be conducted at any particular stage of
the administrative process, see *Warren* v. *Marion County* (1960),
222 Or 307 (353 P2d 257) and *Mallatt* v. *Luihn, supra*.  Also see
*Sunshine Anthracite Coal Co.* v. *Adkins* (1939), 310 US 381, 399,
400 (60 S Ct 907, 84 L Ed 1263); *Argo Oil Corporation* v. *Atwood*
(1935), 274 Mich 47; *Yeary* v. *Bond* (Tex Civ App, 1964), 384 SW2d
376; *Bank of Dearborn* v. *State Banking Commissioner* (1962), 365
Mich 567, 575.

In *Trellsite Foundry & Stamping Company* v. *Enterprise Foundry*
(1961), 365 Mich 209, 217, an apportionment proceeding between
former employers of a successful workmen's compensation claim-
ant, the Michigan Supreme Court ruled that the statute did not
provide procedural due process because no notice of hearing on
the issue of compensation was required to be given to the former
employers and they had no opportunity to resist the employee's
claim at the original hearing where, subject to rights of appeal,
validity of the employee's claim is conclusively determined.  Here
in contrast, the affected parent may obtain a hearing before his
liability is finally determined.

few new concepts affecting a small number of taxpayers.[11] It is improbable that any of the parents liable under this act would be affected by these somewhat esoteric changes and, if they are, their liability can easily be redetermined without regard to these changes.

If Congress should enact a significant change in the definition of taxable income, the Michigan legislature would have ample time in the legislative session following the year of the enactment of the Federal change and before the May 1 filing date prescribed by §§ 6 and 9 of this act either to (i) adopt the change in the Federal definition, or (ii) reject the change and formulate and enact a different basis of reporting income under this act. This would avoid both any delegation of legislative power and the infeasibility of requiring that reports from parents be based on the Federal law as it was before enactment of the change.

There is no need to invalidate this statute. It can and should be saved. See *Alaska Steamship Co.* v. *Mullaney* (CA 9, 1950), 12 Alaska 594 (180 F2d 805), where the court of appeals for the ninth circuit rejected a similar attack on an Alaska statute holding that it would be time enough to consider the claim of unlawful delegation of power when the Federal tax definition is in fact changed.[12]

---

[11] Exemptions for children of divorced parents, 26 USC § 152(e) (amended August 31, 1967), Pub L 90–78, § 1, 81 Stat 191; Earned income for purpose of computing contributions of self-employed persons under qualified retirement plans, 26 USC § 401(c)(2) (amended November 13, 1966), Pub L 89–809, § 204(c), 80 Stat 1577; Short term capital gain for lapses of straddle options to nondealers, 26 USC § 1234(c) (amended November 13, 1966), Pub L 89–809, Title II, § 210(a), 80 Stat 1580; Combat pay, 26 USC § 112(b) (amended November 2, 1966), Pub L 89–739, § 1, 80 Stat 1165.

[12] For a thoughtful and enlightening discussion of the nondelegation doctrine and of the judicial role in regulating administrative exercise of discretion, see Davis, Discretionary Justice (1969).

The plaintiffs challenge sections 6 and 9 of the act[13] which require a parent to submit a signed copy of his most recent Federal income tax return, claiming that this violates the confidentiality provisions of the Internal Revenue Code (26 USC §§ 6103, 7213[a]). The question of whether the Federal confidentiality provisions protect against production of tax returns in private civil litigation has been the subject of diverse judicial decisions.[14] Most courts have concluded that the confidentiality provisions prevent only the Federal government from disclosing income tax returns and, accordingly, a private litigant can be required to produce a copy of his Federal income tax return.[15] The United States Supreme Court has intimated it would adopt this view. *St. Regis Paper Co.* v. *United States* (1961), 368 US 208, 219 (82 S Ct 289, 7 L Ed 2d 240, 249).

I see no basis for a distinction between production compelled by a court in private litigation and production compelled by a State statute in connection with an administrative determination. Since it is our duty to uphold the constitutionality of this act if at all possible, we ought to adopt the construction of the Federal confidentiality provisions—a construction adopted by most courts—which would

---

[13] MCLA §§ 330.656, 330.659 (Stat Ann 1965 Cum Supp §§ 14-.870[106], 14.870[109]).

[14] Compare *United States* v. *O'Mara* (D DC, 1954), 122 F Supp 399, with *O'Connell* v. *Olsen & Ugelstadt* (ND Ohio, 1949), 10 FRD 142, 143.

[15] 4 Moore's Federal Practice (2d ed) § 26.25 [5.–2], p 1568; McCormick, Evidence, § 149, p 312; 8A Merten, Law of Federal Income Taxation, § 47.53; 2A Barron & Holtzoff, Federal Practice & Procedure, § 798, p 448; *Currier* v. *Allied New Hampshire Gas Co.* (1957), 101 NH 205 (137 A2d 405).

In *United Motion Theatre Company* v. *Ealand* (CA 6, 1952), 199 F2d 371, a contrary view may have been indicated by the United States Court of Appeals for the Sixth Circuit. I do not read *Schueler* v. *Weintrob* (1960), 360 Mich 621, as requiring us to give greater credence to the decisions of the United States Court of Appeals for the Sixth Circuit (which includes Michigan) than to the decisions of other Federal courts as the plaintiffs suggest.

sustain the Michigan legislative requirement.[16]    Accordingly, I would hold that the requirement that a parent furnish a copy of his last Federal income tax return does not violate the Federal confidentiality provisions.

The plaintiffs' primary contention is that the graduation provided for in the act's reimbursement schedule is unfair and is an unconstitutional classification denying equal protection of the laws to those who, because they have higher taxable income, are required to pay greater monthly amounts than others less fortunate.

I can think of no basis of classification for social legislation with greater reality and general acceptance than one based on economic differences.    No one would seriously argue that the legislature may not provide free social services to indigent persons. Nevertheless, persons who desire and can afford the same service must themselves pay for the desired service.    If the service is a necessity required for a person's support, a court could compel someone of sufficient financial ability, obligated to provide such support, to furnish the necessity.[17]    Similarly, if the State provides the needed service, the State can demand reimbursement from the financially able person owing the support obligation.

Nor is the legislature's choice limited to the two extremes, no reimbursement or full reimbursement. It may, as it did in this case, require partial reimbursement on a graduated basis according to ability

[16] I cannot accept the argument that there is no compulsion on parents to furnish a copy of their Federal income tax returns because the act allows the parent the choice of submitting his tax return or paying the maximum amount.    MCLA § 330.661(2) (Stat Ann 1965 Cum Supp § 14.870[111] [2]).    A realistic appraisal of these alternatives (pay or disclose) leads to the conclusion that a parent is compelled to furnish a copy of his tax return.

[17] Cf. Sisson v. Schultz (1930), 251 Mich 553; Benjamin v. Bondy (1948), 322 Mich 35, 42; West v. West (1928), 241 Mich 679; Herbstman v. Shiftan (1961), 363 Mich 64, 69.

to pay. If the graduated amounts are reasonable the kind of invidious discrimination and irrationality which alone would justify a declaration of unconstitutionality is absent. *Cf. Mallatt* v. *Luihn* (1956) 206 Or 678 (294 P2d 871), where the Oregon Supreme Court considered at length many of the arguments advanced by the plaintiffs in this case and sustained as constitutional a reimbursement statute providing for graduated liability based on the relative's gross income disclosed in his State income tax return.[18]

Since the reimbursement requirement is an obligation imposed upon one liable to provide support for *services rendered*, the act does not impose a *tax*. Accordingly, plaintiffs' arguments premised on the supposition that the reimbursement requirement is a tax need not be further considered.

· Equally without merit is the argument that the provision in the act which exempts parents of a mentally retarded child who has attained the age of 21 from liability discriminates against parents whose children are still minors. The responsibility of parents to provide for the care and support of their minor children is a universal ethic.[19] Classifications distinguishing adults and minors have been

---

[18] The Oregon Supreme Court also found that, although the standard could have been better expressed, ability to pay, not liability according to the statutory scale, was the ultimate governing standard and that there was adequate provision for review before the relative's liability became fixed. *Mallatt* v. *Luihn, supra.*

[19] At common law, while parents had a duty to support their minor children, they did not have any obligation to support their children after they reached maturity. By statute, parents, grandparents and children of a poor person are, if of sufficient ability, required to provide for the maintenance and support of the poor person. The validity of such statutes has consistently been sustained by the courts. See *In re Raseman Estate* (1969), 18 Mich App 91; *People* v. *Hill* (1896), 163 Ill 186 (46 NE 796), discussing 43 Eliz IC 2, § 7, the progenitor of like statutes enacted in this (MCLA § 401.2 [Stat Ann 1968 Rev § 16.122]) and most of the States (Mandelker, Family Responsibility under the American Poor Laws, 54 Mich L Rev 497 [1956]).

judicially approved in many cases.[20]    Generally, competent adults are emancipated and no longer a financial burden on their parents.  The legislature need not require parents of retarded adults to make reimbursement in order to require reimbursement from parents of a retarded minor.[21]

Nor is there anything irrational in the legislative judgment that parents whose mentally retarded children have been patients in public institutions for 15 years should be relieved of further responsibility even if the child has not attained 21 years of age.[22]  The legislature could rationally conclude that, after 15 years of institutionalization, it is too much to expect even a parent to continue to contribute to the child's support and that the State should assume full responsibility.  The Constitution does not bar this humane dispensation by requiring, in the name of equal protection, that the parents of children institutionalized for shorter periods be relieved of all financial responsibility.[23]  Adoption of plaintiffs' contention might well constrain the legislature to eliminate this dispensation altogether, a result without benefit to the plaintiffs or other parents liable to make reimbursement.

Similarly, the fact that the legislature does not require reimbursement from financially able parents of blind[24] and deaf[25] children for services provided their children does not preclude requiring reim-

---

[20] See *Ginsberg* v. *New York* (1968), 390 US 629 (88 S Ct 1274, 20 L Ed 2d 195), rehearing denied 391 US 971 (88 S Ct 2029, 20 L Ed 2d 887); *Prince* v. *Massachusetts* (1944), 321 US 158, 170 (64 S Ct 438, 88 L Ed 645).

[21] *Cf. Lindsley* v. *Natural Carbonic Gas Co.* (1911), 220 US 61, 78, 79 (31 S Ct 337, 55 L Ed 369, Ann Cas 1912C, 160); *Naudzius* v. *Lahr* (1931), 253 Mich 216, 222.

[22] MCLA § 330.654 (Stat Ann 1965 Cum Supp § 14.870[104]).

[23] *Cf. State* v. *Morgan* (1966), 30 Wis 2d 1 (139 NW2d 585); *Kelly* v. *Williams* (Tex Civ App, 1961), 346 SW2d 434.

[24] MCLA § 393.105 (Stat Ann 1968 Rev § 15.1465).

[25] MCLA § 393.65 (Stat Ann 1968 Rev § 15.1415).

bursement from a mentally retarded child's parents of sufficient ability. The services provided one group of afflicted children differ from those provided the other groups. The cost of the several programs differs both in relative and absolute amounts. Without the supplementation to State funds that parental reimbursement contributions provide, the legislature might decide to curtail the current program for the care of mentally retarded children. Faced annually with the need to provide appropriations to finance the program for mentally retarded children, the legislature may in its wisdom seek parental financial assistance for one program even though a similar reimbursement requirement is not imposed as to all State programs for the care of the handicapped.

"Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the equal protection clause goes no further than the invidious discrimination." *Williamson* v. *Lee Optical Co. of Oklahoma, Inc.* (1954), 348 US 483, 489 (75 S Ct 461, 99 L Ed 563).[26] (Citations omitted.)

Plaintiffs also argue that Const 1963, art 8, § 8[27] obligates the State to provide for the mentally handicapped, that this obligation is nondelegable

---

[26] See *Ferguson* v. *Skrupa* (1963), 372 US 726, 732 (83 S Ct 1028, 10 L Ed 2d 93, 95 ALR2d 1347); *Buck* v. *Bell* (1927), 274 US 200, 208 (47 S Ct 584, 71 L Ed 1000); *Roschen* v. *Ward* (1928), 279 US 337 (49 S Ct 336, 73 L Ed 722); *State* v. *Morgan, supra.*

[27] "Institutions, programs and services for the care, treatment, education or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously handicapped shall always be fostered and supported." Const 1963, art 8, § 8.

and, thus, that the State cannot require reimbursement from relatives. In a companion case we considered and rejected that argument. See *In re Raseman Estate, supra.* We concluded that Const 1908, art 11, § 15 (the predecessor of Const 1963, art 8, § 8) is not self-executing.[28]

Plaintiffs also argue that a classification of taxpayers based on whether they are parents of mentally retarded minors is an unreasonable classification. Starting with that premise, the plaintiffs contend that the State cannot require parents of mentally retarded minors alone among taxpayers to reimburse the State for the child's care. This argument was also considered and rejected in *Raseman.* We said there that a similar classification in a reimbursement statute, *i.e.,* relatives of a mentally diseased person, was a proper and reasonable one having in mind the special benefit to and moral duty of those upon whom the burden of making reimbursement was imposed.

Assuredly, the State has, as plaintiffs contend, an interest in and responsibility for providing for the care of the mentally retarded. But this does not mean that the State has the exclusive responsibility for providing such care. Surely parents of a mentally retarded child are no less concerned than the State in the child's protection and development.

It is the primary responsibility of the legislature, not of the judiciary, to establish priorities and allocate available governmental resources. In a more abundant society government may well be able to assume total responsibility for the care of all the handicapped and helpless.

It has never been thought that just because the government provides free service to the indigent it

[28] *Cf. City of Detroit* v. *Oakland Circuit Judge* (1927), 237 Mich 446, 450.

must also provide free corresponding service to
those financially able to care for themselves. The
State is not obliged to dole out free food to the citizen
of well nourished substance because it feeds the
hungry poor.

In this connection I recognize that the expenditure
of public funds has been required where the United
States Supreme Court has concluded that equal
opportunity is a transcendent value[29] and that if a
government decides to make services and facilities
available it may not do so in an arbitrary manner
and deprive some potential recipients of benefits on
legally irrelevant or legally impermissible grounds.[30]
Recognizing these limitations on the power of gov-
ernment, it seems to me that at this time in the
development of the law we cannot properly say
that the Michigan legislature enacted an unconstitu-
tional statute when it required contributions for the
support of State institutionalized, mentally retarded
children to be made by those parents of such chil-
dren who can afford to do so.

. We have not yet reached the era when govern-
ments have the resources to do all things that
should or might be done, when governments have

---

[29] See, e.g., Griffin v. Illinois (1956), 351 US 12 (76 S Ct 585, 100
L Ed 891, 55 ALR2d 1055), rehearing denied 351 US 958 (76 S Ct
844, 100 L Ed 1480); Douglas v. California (1963), 372 US 353 (83
S Ct 814, 9 L Ed 2d 811), rehearing denied 373 US 905 (83 S Ct
1288, 10 L Ed 2d 200); Gideon v. Wainwright (1963), 372 US 335
(83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733).

[30] See, e.g., Shapiro v. Thompson (1969), 394 US 618 (89 S Ct 1322,
1327, 22 L Ed 2d 600, 611); Brown v. Board of Education (1954),
347 US 483, 494 (74 S Ct 686, 98 L Ed 873, 38 ALR2d 1180);
American Communications Association C.I.O. v. Douds (1950), 339
US 382, 417 (70 S Ct 674, 94 L Ed 925), rehearing denied 339 US
990 (70 S Ct 1017, 94 L Ed 1391) (per Frankfurter, J.).

See Graham, Public Assistance; The Right to Receive; the Obliga-
tion to Repay, 43 NYU L Rev 451 (1968). For a discussion of the
"old" and "new" equal protection, see Sager, Tight Little Islands:
Exclusionary Zoning, Equal Protection and the Indigent (1969), 21
Stanford L Rev 767–780. See, also, Kirp, Equal Education?, 78
Yale LJ 908 (1969).

the legally enforceable duty to lift the burden of affliction from those who, like the plaintiffs and their child, are its accidental victims, when governments have the legally enforceable duty when they do act to distribute funds appropriated to relieve a particular misfortune to each according to his need and to each without regard to his need, when the right which plaintiffs seek to establish can be judicially recognized.

I would reject plaintiffs' attack on the constitutionality of this act.